## Case No. 4,188.

DURANT v. HOSPITAL LIFE INS. CO. OF MASSACHUSETTS.

[2 Lowell, 575; 16 N. B. R. 324; 15 Alb. Law J. 436.] [1]

District Court, D. Massachusetts. May, 1877.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission. 15 Alb. Law J. 436, contains only a partial report.]

W. B. Durant, pro se.

H. C. Hutchins and E. W. Hutchins, for defendants.

LOWELL, District Judge. How far the law of this country generally, or of Massachusetts in particular, conforms to the doctrine of Brandon v. Robinson, 18 Ves. 429, I do not care to consider. The question is at this time before the supreme judicial court of this state, if I am rightly informed, and is likely to be settled in due course; but I consider this case to be governed by Nichols v. Eaton, 91 U. S. 716.

The annuity given to the bankrupt was given him in trust for the uses set forth in the contract with the defendant company. It was argued that those words were the expression of a motive, or a wish, on the part of the donor; but they are the language of command, and there is nothing precatory about them. The payments are to be made to the bankrupt, and after his death to his wife, "the income thereof to be applied to the support of said Samuel K., Jr., and of his said wife, and the education and support of their children;" and, again, the company agree to pay the income to the bankrupt or his wife, "in the order and for the purposes aforesaid." No doubt his receipt is a discharge, and the company take care not to be responsible for the application of the money; but that application is ordered, and the wife and children, or any of them, could maintain a bill against the bankrupt for its enforcement. Whiting v. Whiting, 4 Gray. 236; Chase v. Chase, 2 Allen, 101; Loring v. Loring, 100 Mass. 340; Cole v. Littlefield, 35 Me. 439; Wright v. Miller, 8 N. Y. 10; Lucas v. Lockhart, 10 Smedes & M. 466. The point is well put by Mr. Perry, in his excellent work on Trusts (section 117) that the question to be decided is, whether the settlor intended to impose an obligation, or only to assign the motive for an absolute gift. And I say again, the language is not at all doubtful here; the son, in the first instance, and his widow, if she should survive him, are to take this income and apply it to the purposes mentioned. I agree with a note of Mr.

Perry's to the same section, that the tendency of the later cases is to seek, somewhat less astutely than formerly, to discover trusts in precatory words; but in no case, late or early, that I have seen, are words like those in this case treated as precatory.

A doubt was suggested in argument whether a trust could be grafted on a trust. Some inconveniences in the working of such a sub-trust were mentioned in a Massachusetts case (Rich v. Rogers, 14 Gray, 174), but the court, in the later case of Chase v. Chase, 2 Allen, 101, found them not insuperable. And in all the cases above cited in which an annuitant or life-tenant has been held to be a trustee, the corpus of the property was already in trust, and he was only a sub-trustee, as he is called in Chase v. Chase, ubi supra.

Nor is there any difference between a settlement inter vivos and a will, in the creation of a trust, excepting that a greater latitude of construction is allowed in ascertaining the intent of a testator, who is supposed to labor under some disadvantages for expressing his meaning, as compared with one who is drawing up a marriage settlement, or entering into one of the more deliberate transactions of life. As there is no obscurity in the language of this instrument, the difference is unimportant.

Then the question remains: What interest have the creditors of S. K. Williams, Jr., in this annuity? It was conceded at the argument, and is the law, that whatever Williams could have assigned, or his creditors could have reached by any proceedings in equity, can be made available by his assignee for the payment of his debts. There are cases in which the courts have inferred from the terms of the settlement, or from the situation of the parties, that the beneficiaries were to take equal shares, per capita. One of the earliest of these cases is Rippon v. Norton, 2 Beav. 63; but the propriety of the decree in that case was questioned in Wallace v. Anderson, 16 Beav. 533; and such an artificial mode of division could not have been contemplated, and would not be just, in the existing circumstances of this family There are other cases in which an inquiry has been ordered before a master into the necessities of the wife and children, with an intimation that whatever was not wanted for their support and education would belong to the assignee. Where, however, the trustees have a discretion by which they may deprive the debtor of income altogether, I understand the modern doctrine in England to be that the assignee in bankruptcy will take only what, if any thing, the trustees actually appropriate to the debtor. Lord v. Bunn, 2 Younge & C. Ch. 98; Kearsley v. Woodcock, 3 Hare, 185; Trappes v. Meredith, L. R. 10 Eq. 604, reversed on another point, L. R. 7 Ch. App. 248.

In England, the assignees in bankruptcy formerly acquired all the debtor's property, present and future, until his discharge; and even now they take it until his discharge, or the close of the proceedings in bankruptcy, whichever event may first occur; and, by the insolvent law, under which some of the decisions were made, his person only was discharged, and the assignees took the whole property, until the debts were fully paid. Under this system it was possible for a court of equity to shape its decrees from time to time to meet events as they occurred. If, for example, the children died or were emancipated, and the trusts as to them were accomplished, it could decree a larger amount to the assignee; and, if more children were born, might vary the decree in an opposite sense. But the assignee under our bankrupt law takes at once whatever interest is assignable, and must sell it promptly in his turn; and what I have to decide is, whether I can decree that any specific part of this annuity has come into his hands to be disposed of in that way.

In principle and reasoning, this case, as I have already said, is governed by Nichols v. Eaton, 91 U. S. 716. There the trustees had a full discretion how to dispose of the income; and it was held that the assignee took nothing. I think the debtor in this case has such a discretion, from the very necessity of the case. The trust does not depend upon the person of the trustee; and I am inclined to think that the supreme judicial court would have power to appoint some other person to receive this income, if it were shown that by reason of his insolvency and its consequences, or for any other reason, the debtor had become unfit to fill the office of trustee; and I think such a new trustee would have a full discretion in the appropriation of the income.

If this is not so, but the bankrupt is entitled to some part of this income, yet I think it impossible for any court to say what that part is; for the reason that it may be a constantly varying quantity, and that it would be both impracticable and unjust for me to undertake to decree to the assignee an interest for the life of the bankrupt in any such aliquot part. It is plain that if I cannot do that, I cannot give him any thing which will be of value to the creditors. No doubt this amounts to saying that the bankrupt will have some benefit from the trust; but this is the actual result of the English decisions concerning discretionary trusts, which is approved and followed in Nichols v. Eaton, ubi supra. This effect is pointed out by Mr. Robson, in his work on Bankruptcy (3d. Ed., p. 396), and I do not see how a court can prevent it.

The case is a hard one for the creditors; and I shall be willing to hear the parties further on the question of costs, which was but very briefly touched upon in the argument. Bill dismissed (question of costs reserved).