ELBRIDGE CLAPP, executor, *vs.* FREDERICK W. INGRAHAM
& others.

Suffolk.   March 21, 1877. — Jan. 29, 1879.   LORD & SOULE, JJ., absent.

If property is put in trust, the income to be paid to A. for life, and the prin-
cipal, after the death of A., to his executor in trust, for the use of such per-
son or persons as A. may by will appoint, and A. executes the power, the
property appointed is deemed in equity part of A.'s assets, and subject to the
demand of creditors, in preference to the claims of his voluntary appointees or
legatees.

BILL IN EQUITY, filed April 21, 1876, by the executor of
the will of Caroline A. Ingraham, against the children of the
testatrix, and her creditors, for instructions, alleging that on
January 1, 1828, the Massachusetts Hospital Life Insurance
Company received from Joseph Head, trustee of Caroline A.
Ingraham, wife of Daniel G. Ingraham, the sum of $3000, and
executed to him an instrument in writing, whereby they prom-
ised and agreed with him, his executors and administrators,
to invest the same, and to pay the income thereof quarterly
to Mrs. Ingraham, " during the natural life of the said Caro-
line, upon her separate order and receipt, to be dated on or
subsequent to the several days on which the said several pay-
ments shall fall due; for her separate use, free from the debts,
control or interference of any husband she now has, or may
hereafter have; which annuity and principal sum are both
hereby declared to be inalienable by the respective grantees
thereof; " and further agreed with the said trustee, his executors
and administrators, " that, in sixty days after proof of the decease
of the said Caroline, they will assign, transfer and pay the
amount of the aforesaid principal sum (or such part thereof as
shall not have been lost by bad debts or otherwise, without the
actual fault of said company or their servants), and all interest
then due thereon at the time of her death, in real estate, stocks,
notes, bonds and mortgages, belonging to said company, all, any
or either of them, at the pleasure and discretion of the directors,
at the prices at which the same respectively shall stand charged
in the books of the company at the decease of said Caroline, in
the way and manner provided in said extract from said article,

to her executors or administrators in trust, and for the special use and benefit of such person or persons as the said Caroline by her last will and .testament, or any revocable appointment in nature thereof, may direct; and if no such will and appointment be made, then to such person or persons as may be her heirs at law."

The bill further alleged, that Caroline A. Ingraham died on January 20, 1876, leaving a will, dated October 16, 1871, which was duly admitted to probate, appointing the plaintiff her executor, and containing the following clause: "I direct my said executor to receive from the Massachusetts Hospital Life Insurance Company the sum of three thousand dollars and all interest and accumulations thereon, or the real estate, stocks, notes, bonds and mortgages in lieu of said sum with interest and accumulations, which by the terms of a contract in writing between said company and Joseph Head, trustee, executed the first day of January, one thousand eight hundred and twenty-eight, the said company agrees to assign, transfer and pay to my executors or administrators in sixty days after proof of my decease; and out of the money or other property received from said company, I direct my said executor to have and keep, for his own use and benefit, the sum of four hundred dollars; and to assign, transfer and pay over all the remainder of the money, or other property received from said company, after deducting said sum for his own use and benefit, to my children and the issue of any deceased child or children by right of representation in equal shares."

The bill further alleged, that the plaintiff had received from said company the sum of $3000, and that, after diligent search and inquiry, no other property of the testatrix had come to his possession or knowledge; that the testatrix left two children surviving her, who contended that they were entitled to receive the whole of the sum remaining in the plaintiff's hands after deducting the sum of $400; that the testatrix left debts to a large amount, and that the creditors contended that said sum was liable, in the plaintiff's hands, as executor, for the payment of such debts.

The children of the testatrix and certain of the creditors filed answers, admitting the allegations of the bill, and setting up

their respective claims; and the case was heard by *Morton*, J., upon the bill and answers, and reserved for the consideration of the full court.

*T. P. Proctor*, for the creditors.

*G. M. Hobbs*, for the children.

GRAY, C. J.    It was settled in the English Court of Chancery, before the middle of the last century, that where a person has a general power of appointment, either by deed or by will, and executes this power, the property appointed is deemed in equity part of his assets, and subject to the demands of his creditors in preference to the claims of his voluntary appointees or legatees. The rule perhaps had its origin in a decree of Lord Somers, affirmed by the House of Lords, in a case in which the person executing the power had in effect reserved the power to himself in granting away the estate. *Thompson* v. *Towne*, Prec. Ch. 52; *S. C.* 2 Vern. 319.    But Lord Hardwicke repeatedly applied it to cases of the execution of a general power of appointment by will of property of which the donee had never had any ownership or control during his life; and, while recognizing the logical difficulty that the power, when executed, took effect as an appointment, not of the testator's own assets, but of the estate of the donor of the power, said that the previous cases before Lord Talbot and himself (of which very meagre and imperfect reports have come down to us) had established the doctrine, that when there was a general power of appointment, which it was absolutely in the donee's pleasure to execute or not, he might do it for any purpose whatever, and might appoint the money to be paid to his executors if he pleased, and, if he executed it voluntarily and without consideration, for the benefit of third persons, the money should be considered part of his assets, and his creditors should have the benefit of it. *Townshend* v. *Windham*, 2 Ves. Sen. 1, 9, 10.    *Ex parte Caswall*, 1 Atk. 559, 560.    *Bainton* v. *Ward*, 7 Ves. 503, note; *S. C.* cited 2 Ves. Sen. 2, and Belt's Supplt. 243; 2 Atk. 172.    *Pack* v. *Bathurst*, 3 Atk. 269.    The doctrine has been upheld to the full extent in England ever since.    Chance on Powers, c. 15, § 2. 2 Sugden on Powers (7th ed.) 27.    *Fleming* v. *Buchanan*, 3 DeG., M. & G. 976.

Although the soundness of the reasons on which the doctrine

rests has been impugned by Chief Justice Gibson, *arguendo*, and doubted by Mr. Justice Story in his Commentaries, the doctrine is stated both by Judge Story and by Chancellor Kent as well settled; and it has been affirmed by the highest court of New Hampshire, in a very able judgment, delivered by Chief Justice Parker, and applied to a case in which a testator devised property in trust to pay such part of the income as the trustees should think proper to his son for life, and, after the son's death, to make over the principal, with any accumulated income, to such persons as the son should by will direct. *Commonwealth* v. *Duffield*, 12 Penn. St. 277, 279–281. Story Eq. Jur. § 176 and note. 4 Kent Com. 339, 340. *Johnson* v. *Cushing*, 15 N. H. 298.

A doctrine so just and equitable in its operation, clearly established by the laws of England before our Revolution, and supported by such a weight of authority, cannot be set aside by a court of chancery, because of doubts of the technical soundness of the reasons on which it was originally established. It is true that, as the rights of the creditors could only be enforced in a court of chancery, they were remediless so long as no adequate equity jurisdiction existed in this Commonwealth. *Prescott* v. *Tarbell*, 1 Mass. 204. But such a consideration affects the remedy only, and not the right, and affords no reason for denying the right now that this court, sitting in equity, has been vested by the Legislature with ample powers to maintain and protect it. Gen. Sts. c. 113, § 2. *Rogers* v. *Ward*, 8 Allen, 387, 390.

By the instrument of trust in the case before us, an annuity was payable quarterly to Mrs. Ingraham during her life, and the principal after her death to her executor or administrator in trust and for the special use and benefit of such persons as she by her last will, or by any revocable appointment in the nature thereof, might direct, and if no such will or appointment should be made, then to her heirs at law. The only restrictions expressed are, that the annuity during her life is to her separate use, free from the debts or control of her husband, and each instalment thereof is to be paid upon her order when or after it has fallen due, so that she would have no right to assign it by way of anticipation; *Perkins* v. *Hays*, 3 Gray, 405; and that the annuity and the principal are both declared to be "inalienable

by the respective grantees thereof," — which clearly has no application to the general power of appointment, conferred upon her by the express terms of the trust, to dispose of the principal, after her death, by will or testamentary instrument in the nature thereof; and, she having exercised the dominion so granted to her, the property is thus brought within the equitable doctrine which makes it subject to her debts.

We are aware that it has been held by Vice Chancellor Kindersley, and by Lord Romilly, M. R., that the doctrine does not extend to the case of the execution of a general power by a married woman, without fraud. *Vaughan* v. *Vanderstegen*, 2 Drew. 165, 363. *Blatchford* v. *Woolley*, 2 Dr. & Sm. 204. *Hobday* v. *Peters*, 28 Beav. 354. *Shattock* v. *Shattock*, L. R. 2 Eq. 182; *S. C.* 35 Beav. 489. We need not consider whether those cases were well decided, or are applicable in this Commonwealth, where, by statute, every married woman has long been liable to be sued, and her property taken on execution, upon contracts made by her for her own benefit, and, since 1874, upon all her contracts with any person but her husband. Gen. Sts. c. 108, §§ 1, 3. St. 1874, c. 184. *Willard* v. *Eastham*, 15 Gray, 328, 334. *Major* v. *Holmes*, 124 Mass. 108. It is quite clear that, even in England, all restrictions on her capacity and liability would terminate with her coverture. *Tullett* v. *Armstrong*, 1 Beav. 1, 32, and 4 Myl. & Cr. 377, 395 *&* seq. And in the present case it does not appear, and has not been contended, that Mrs. Ingraham continued to be a married woman at the time of contracting the debts in question, or of exercising the power.

In *Nichols* v. *Eaton*, 91 U. S. 716, and in *Durant* v. *Massachusetts Hospital Life Ins. Co.* 2 Lowell, 575, the settlement differed from that before us in expressly providing that the property should not be subject to the debts of the *cestui que trust*, and in giving no general power of appointment; and there is nothing in the decision or opinion, in either of those cases, that is adverse to the claims of creditors in the case at bar.

*Decree for the creditors.*