NATHANIEL J. BRADLEE & another, trustees, *vs.* FRANK W. ANDREWS & others.

Suffolk.   Nov. 22, 1883. — March 10, 1884.   C. ALLEN & HOLMES, JJ., absent.

A testator by his will gave one fifth of his personal property to his son E., "to have and to hold to him, and to his executors, administrators, and assigns forever." By a subsequent clause, he devised all his real estate to trustees, in trust to pay an annuity, and provided that, subject to the annuity, "said rents and income shall be applied equally by my said trustees to the maintenance, support, and comfort of my said sons and daughters in equal shares of one fifth each, and of their families, if they have any, during their natural lives, and until the death of my last surviving child," the issue of a deceased son or daughter to take the parent's share of the income until the termination of the trust. By a codicil, the testator stated that he had advanced to E. more than his share of the estate, both real and personal, and proceeded as follows: "I hereby revoke all the several paragraphs of said will wherein the said E. is given one fifth part of principal and income to him and to his heirs and assigns forever, and direct that the said principal and income, both now and in the final division, shall be divided into four equal parts, one to each of my other said children," "and to their heirs and assigns forever." *Held*, that the provisions in the will in favor of E. were revoked by the codicil.

A testator by his will devised his real estate to trustees, in trust to apply the rents and income to the maintenance, support, and comfort of a son and three daughters in equal shares of one fourth each, and of their families, if they should have any, the issue of a deceased son or daughter to take the parent's share of the income until the termination of the trust. *Held*, that the trustees might, in their discretion, pay to either child of the testator its full proportionate share of the income. *Held, also*, that the word "family" included the son and daughters, and their respective children so long as the latter should live with their respective parents, or be of tender years and entitled to support. *Held, also*, that it would include the son's wife, if she continued to reside with, or be entitled to support from, him.

By the first codicil to his will, a testator revoked a provision in the will giving one fifth of the income of his estate to a son, and gave to the son $5000 annually for life, the same to be paid before the division of one quarter to each of his other children. By a second codicil he revoked the provision of the first codicil giving $5000 annually to his son, and, in lieu thereof, gave him one tenth part of the net income of certain real estate, the same not to exceed $2000 annually, and to be paid in quarterly payments. After this, the testator conveyed the real estate upon which the annuity was charged to trustees, in trust to appropriate the income to the payment of certain debts, and then to reconvey the property to himself. The testator died before the property was reconveyed to him, and sixteen months after his death it was reconveyed to the trustees under his will. *Held*, that the son was not entitled to claim his share of the income, during this time, out of the general estate of the testator; but that the son was entitled to the surplus of one tenth part of the income above $2000, if any afterwards existed, in payment of the arrearage.

Land was conveyed to A. in fee. On the day of the conveyance, A. executed a declaration of trust, reciting that the land was held by him in trust for the benefit of a daughter, to permit her to enjoy the same for her life, and, on her death, to convey the same in fee to her children. Subsequently an agreement was made between A., his daughter, and her husband, reciting that A. had advanced a certain sum to his daughter for the purchase of the land more than he had advanced to his other children, and that he then held the premises under the declaration of trust; and it was agreed that the daughter should pay interest on this sum annually, or if not paid that it should be added to the principal; and that, at the death of A., a certain sum a year should be withheld from the income to be bequeathed to the daughter by A., until the principal and interest should be fully paid; that, when fully paid, the declaration of trust should be void, and the premises should be conveyed to the daughter if living, or to her children if she were dead. The will of A., subsequently made, left certain property in trust, the income to be paid to the daughter, and provided for the mode in which debts due from his children should be paid. A codicil to his will revoked that portion of the will which provided for the payment of debts due from his children, so far as it applied to his daughter, and directed that the debt due from her be discharged. When this codicil was made, no debt was due A. from his daughter, unless she was indebted to him by virtue of the agreement. *Held*, that whether the sum due under this agreement with interest was strictly a debt or not, it was the intention of the testator that it should be discharged.

DEVENS, J. This is a bill in equity for instructions as to the proper effect to be given to certain provisions in the will of the late William T. Andrews.

1. We consider primarily the second question proposed by the bill, in its ninth paragraph : " Whether the defendant Edward R. Andrews or his said wife or children are entitled to any share or interest in the said rents and income of the testator's real estate other than the interest given him by the said second codicil." The second codicil is itself a substitute for the first codicil. If the first codicil did not operate to revoke the provisions made for the benefit of Edward R. Andrews and his family by the will itself, such effect cannot be attributed to the second codicil, the main object of which is only to provide for him a smaller income than that for which provision is made by the first codicil. It is not contended that he is entitled to both the provision made by the will itself and that made by the first codicil, and, as a substitute therefor, by the second codicil. If the attempted revocation of the provisions of the will by the first codicil was inoperative, it would therefore be unnecessary to consider in detail the precise effect of the second codicil.

The third clause of the will gave the testator's wife certain specified personal property, " with remainder thereof on her decease to my children and their heirs respectively, share and share alike."

In its fourth clause the will gave one fifth part of his personal estate to his son Edward R. Andrews, " to have and to hold the same to him and to his executors, administrators, and assigns forever ; " another fifth was given by similar terms to the testator's son Frank W. Andrews, and the remaining three fifths were given to the trustees under the will, for the benefit of his daughters and their children.

By the fifth clause, all the real estate of the testator was devised to trustees, in trust to permit his widow to occupy his town and country house, and to pay her an annuity, out of the rents and income of the real estate, of $10,000 during life. Subject to the charge of the annuity, provision is made by the testator that " said rents and income shall be . . . . applied equally by my said trustees . . . . to the maintenance, support, and comfort of my said sons and daughters, in equal shares of one fifth each, and of their families, if they have any, during their natural lives, and until the death of my last surviving child." The fifth clause also provides that the issue of a deceased child shall take the parent's proportional share of the income until the termination of the trust. " It being my purpose and intent that the said net rents and income shall be applied and disposed of for the maintenance, support, and comfort of my said sons and daughters and their families, and the issue of any deceased son or daughter, and that the same shall not be liable for, or chargeable with, any debts contracted by them or either of them, or by the present husbands or by any future husbands of my said daughters, and that they shall not have power to sell, assign, or exchange, transfer, incumber, or in any manner dispose of or anticipate, said net rents and income, or any part thereof."

The first codicil, after reciting that it has become apparent that the testator has already advanced to his son E. R. Andrews more than his full share of the estate both real and personal, and that it would be unjust to other children that he should again receive a full share, adds, " I hereby revoke all the several paragraphs of said will wherein the said Edward R. Andrews

is given one fifth part of principal and income to him and to his heirs and assigns forever, and direct that the said principal and income, both now and in the final division, shall be divided into four equal parts, one to each of my other said children therein named," " and to their heirs and assigns forever," and gives to Edward R. Andrews the annual sum of $5000 during his natural life, " the same to be paid out of the trust fund instituted under the fifth clause on page eight of said will, before the division of the one quarter to each of my other children."

It is contended on behalf of E. R. Andrews, that the language of the revoking clause which is found in the first codicil is too vague and indefinite to enable the court to ascertain or carry out the testator's intention, whatever that may have been, and that it is therefore void for uncertainty.

It must be conceded that there are no paragraphs in the will which are described with technical accuracy in the codicil. But the intention of the testator is, we think, satisfactorily shown, to withdraw all the provisions of the will under which E. R. Andrews or his family had a beneficial interest, and to substitute therefor the annuity. His language, inaccurate as it may be, is not so unfortunate that it will not enable us to carry out that intent. The mere conjectural import of words used is not a sufficient guide; but when the meaning of the testator is fully revealed by that which he has written, inaccuracies, imperfections, or even deficiencies and inconsistencies of language, should not interfere with it. *Weston* v. *Weston*, 125 Mass. 268. Nor, in ascertaining the meaning of the language used in the revocatory clause, are we limited to this clause alone. If the reading of the whole will and codicil produce a conviction that the testator must necessarily have intended that which he has failed to express by apt and formal words, " the court," in the language of Chief Justice Gray, in *Metcalf* v. *Framingham Parish*, 128 Mass. 370, 374, " must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." *Ferson* v. *Dodge*, 23 Pick. 287. *Towns* v. *Wentworth*, 11 Moore P. C. 526. *Abbott* v. *Middleton*, 7 H. L. Cas. 68. *Newburgh* v. *Newburgh*, Sugden's Law of Property, 367–369. *Sweeting* v. *Prideaux*, 2 Ch. D. 413.

The fifth clause is the only paragraph in the will referring to income so far as the children are concerned, and "income" is also spoken of in the clause of revocation. It is also the only clause having reference to real estate; and the testator assigns, as the reason for the change in the disposition of his property, that it would be unjust, in view of that which he has received, that Edward R. should receive another share of his real and personal property. It is highly inaccurate that a testator should speak of a share of the principal and income as devised by his will to Edward R. and his heirs, when the income was to be paid during his life, through the intervention of trustees, for the support of himself and his family, while eventually, upon the termination of the trust, the share of the principal, from which the income was derived, was to be divided among his children or their issue. Yet an examination of the clause in the codicil which follows the attempted revocation satisfies us that it was the intent of the testator to revoke this fifth clause, so far as it applied to Edward R., his family, and issue. That which he has sought to withdraw from Edward R. he seeks to give to his other children by the words, "and direct that the said principal and income, both now and in the final division, shall be divided into four equal parts, one to each of my other children, Emily, Frank, Elizabeth, and Caroline, and to their heirs and assigns forever." In bestowing, as in withdrawing, he uses words of absolute gift; at the same time, it is apparent that, while he has used these words, differing from those of the will, he has not intended to revoke the trust created by the will so far as the share there appropriated for the benefit of Edward R. is concerned, but only to give to his other children and their families, by means of that trust, the benefit of that from which he has excluded Edward R. and his family.

The "principal and income" of the trust property are by the codicil to be divided into four equal parts, instead of five. The words "both now and in the final division" must refer to the time when the will shall become operative by the death of the testator, and to the subsequent time when the trust shall be terminated by the death of the last of his surviving children. Again, the substituted provision of a fixed income for Edward R. is made to depend upon the existence of the trust, and is to be paid

" before the division of the one quarter to each " of the testator's other children.

The word " heirs " appears to have been used by the testator as if it were a general word, which might mean those who were properly so, or " executors and administrators," or " family," or " children "; but if the intent to revoke the fifth clause so far as it applied to Edward R. and any of them is satisfactorily shown, this misuse should not defeat it. *Minot* v. *Harris*, 132 Mass. 528. *Hardwicke* v. *Douglas*, 7 Cl. & Fin. 795.

2. The next inquiries to be considered are whether the four children may give the trustees a discharge for the respective shares of income which are to be applied to the support of themselves and their families; also, who are included in the word " families "; and what are the rights respectively of the children of the testator, of their children, and of the wife of one of the sons.

The direction that the trustees shall apply the net income to the support of the children and their families vests a discretion in them, under which they may, if they deem it wise, and consider that the income is devoted to the purpose intended by the testator, pay to either child the full proportionate share of the income. This discretion, unless it be in some way abused, the court will not undertake to control. *Durant* v. *Hospital Life Ins. Co.* 2 Lowell, 575. *Williams* v. *Bradley*, 3 Allen, 270, 284.

The word " family," as used by the testator, would include his son and daughters, together with their respective children so long as they should live together and form a portion of the same household, or from their tender years be entitled to be treated as its members. It would also include the wife of the son, if she continued to reside with, or be entitled to support from, him. *Bowditch* v. *Andrew*, 8 Allen, 339. *Bates* v. *Dewson*, 128 Mass. 334.

It was not contemplated that distinct and independent shares of the income should be appropriated to the wife of the son, or to either of the children of the testator's children, except after the decease of their parent, unless, at least, in the discretion of the trustees, this became necessary in order to protect them in their right to maintenance and support. It was rather intended that, while the portion of income was judiciously expended

for their own support and that of their families, by the son or daughters respectively, it should be paid to them. This bequest to trustees presents no such case as is found where a bequest of income is made to one person for his own support and that of another, where each would be entitled to the benefit of one half the income. *Loring* v. *Loring*, 100 Mass. 340. *Bates* v. *Dewson, ubi supra.*

The conclusion which we reach on this point is fortified by the passages of the will in which the testator speaks of the shares into which he has caused the income to be divided, as if they belonged to his children solely. Thus, " the portion of said rents and income which my daughters shall be entitled to receive " is declared, in a passage referring to daughters only, to be for their sole use and benefit, and payable upon their sole and separate receipts. In a passage which refers to both sons and daughters, he provides that this income is " not liable for, or chargeable with, any debts contracted by them." It is not to be supposed that he would not equally have protected his grandchildren had he deemed that he had bestowed any distinct income upon them. Again, upon the decease of either a son or daughter, it is provided that his or her issue shall take " the share or proportional part of said net rents and income, until the determination of the trust estate as herein provided, to which his, her, or their parent was entitled," and at the termination of the trust, the fund " shall become vested absolutely and in fee simple in my grandchildren then living, by right of representation, according to the interest therein of their respective parents."

3. By the second codicil the annuity of $5000, given to Edward R. by the first codicil, and charged upon the trust fund, was revoked, and, in lieu thereof, "one tenth part of the net income " of certain real estate on Washington Street in Boston was bequeathed to him ; but in no event was said tenth part to exceed $2000, to be paid him in equal quarterly payments. After the codicil was executed, the testator made a conveyance of certain real estate, including that on which this annuity was charged, to trustees, to appropriate the income thereof to the payment of certain debts, and afterwards to reconvey the property. The testator died on November 25, 1879, and it was not until March 30, 1881, that the trustees under this conveyance, having executed

their trust, conveyed to the trustees under the will. The ques-
tion is presented, whether Edward R. is entitled to any pay-
ment in respect to the time which thus elapsed. This legacy
was specific. It was not a legacy of money payable out of a
particular fund, but of a distinct share of a fund, with a provision
that such share should not amount to more than a certain sum.
It is contended, therefore, that it abated during the time that
the rents out of which it was payable were being used under the
trust which the testator had created for the benefit of creditors.

As there is no claim except upon the fund specifically be-
queathed, this deficit cannot be made a charge on the general
estate. But where there is a legacy of a definite amount spe-
cifically charged as an annuity upon the rents or income of a
certain estate, if in any one year the estate, or share of it ap-
propriated to the annuity, shall fail to produce the amount, the
arrearages of the annuity are chargeable upon the subsequent in-
come received, so that, if more shall be produced than is required
for the current payments, it may be applied to their liquida-
tion. *Graves* v. *Hicks*, 11 Sim. 536, 555. *Booth* v. *Coulton*,
L. R. 5 Ch. 684. *Taylor* v. *Taylor*, L. R. 17 Eq. 324. *Nudd* v.
*Powers*, 136 Mass. 273. The same principle should be applied
even where the testator sets aside during his lifetime, for a tem-
porary purpose, the income he has already bequeathed, although
the arrearage thus created is by his own act, and not by a failure
in the income-producing capacity of the property. By charging
an annuity upon the income of specific property, he has shown
an intent that the annuitant shall receive it whenever it can be
realized therefrom, even if in the form of arrears. Even if the
effect of his act is to apply for a time the income elsewhere,
the original intent remains. It cannot be held that he has thus
indicated an intent to adeem the legacy *pro tanto*, especially
where it is the only provision made for one of his children, and
far less in value than that made for the others. The deficiency
created by the appropriation, after the testator's death, of the
share of income bequeathed to Edward R. to the purposes of
the trust he had created, must be deemed an arrearage of the
annuity, and the surplus of one tenth part of the rents above
$2000, if any now exists or shall hereafter accrue, should be
applied to its liquidation.

4. The remaining inquiry is as to the duty of the trustees in relation to a sum of money paid by the testator for the benefit of his daughter, Mrs. Clark. On August 20, 1869, the testator received from one Drew a deed, which, as reformed, conveyed to him in fee a certain tract of land on Commonwealth Avenue in Boston, for which he paid $13,000, and on which he subsequently erected a house. On the same day, he made a declaration of trust, duly executed and recorded, in which he recited that the land was held by him in trust, for the benefit of Mrs. Clark, to permit her to enjoy the same during her life, and at her decease to convey the same in fee simple to her children at that time living. On January 1, 1871, an agreement was made between Mrs. Clark, her husband being a party thereto, and the testator, which recited that the testator had advanced for the purchase of these premises and the erection of the house thereon $31,096.88 more than he had advanced to his other children; and that he then held the premises under the before-mentioned deed of trust; and it was agreed that Mrs. Clark should pay six per cent annually upon this sum, or, if not paid, that it should be added to the principal, and that at the death of the testator the sum of $5000 a year should be withheld from the income to be bequeathed by the testator to Mrs. Clark, until the principal sum and interest should be fully paid. It was further provided, that, when the sum should have been fully paid, the declaration of trust should be void, and the premises should then be conveyed to Mrs. Clark in fee if she were then living, or to her children if she had deceased.

The will of the testator, made on December 26, 1874, provided for the mode in which debts due from his children should be paid, and the first codicil revoked that portion of the will, so far as it applied to Mrs. Clark and his son F. W. Andrews, which provided for the payment of debts due from his children, and directed "that the debts due from them shall be discharged." When this codicil was made, no debt was due from Mrs. Clark, unless she was indebted to the testator by virtue of the agreement of 1871, and the question therefore is whether the word "debts" contained in the codicil refers to the sum of money to be paid by Mrs. Clark with interest, or to be deducted from the income to be bequeathed to her. Whether the sum of

$31,096.88 was technically a debt or not, and whether an action could be maintained against Mrs. Clark to recover it by the executors, are not necessarily decisive of this question. It is to be determined by the meaning which the testator saw fit to attach to the word, if that can be ascertained. *Brimmer* v. *Sohier,* 1 Cush. 118. *Metcalf* v. *Framingham Parish, ubi supra.* Unless it refers to this sum, no meaning can be given to the clause of the codicil so far as it applies to Mrs. Clark, the language of which shows that the testator contemplated debts as then existing, and did not refer to any which might thereafter be created. Even if originally an advancement, this sum had assumed the character of a debt in the transactions between the testator and Mrs. Clark. She had in terms agreed to pay the interest upon it annually, and ordinarily no advancement bears interest. *Osgood* v. *Breed,* 17 Mass. 356. There had been provided also a distinct method by which the principal sum and the accumulations of interest, if any, should be repaid to the estate of the testator. Whether the agreement of January 1, 1871, was valid, or whether it was in derogation of the rights of others than Mrs. Clark and the testator, we have no occasion to consider. The fact that the testator deemed her entitled to an absolute conveyance, and agreed that one should be made to her on payment of this sum, tends strongly to show that he considered it as in the nature of a debt for which he held the estate as security. Whether properly described as a debt or not, we are of opinion that he intended to discharge Mrs. Clark from the payment of this sum and the interest thereon. *Decree accordingly.*

*A. S. Wheeler & J. H. Young,* for Edward R. Andrews, his wife, and children.

*F. C. Welch,* for Mrs. Clark and the children of the testator other than Edward R. Andrews.

*F. I. Amory,* for the children of Frank W. Andrews.

*C. L. B. Whitney,* for the children of Mrs. Clark.