SARAH WALES' ADMR: ET AL. *v.* LORA BOW-
DISH'S EXR. ET AL.

*Devise.   Power of Appointment.*

1. A Court of Equity should so interpret the law in construing a trust cre-
ated by will as to effectuate the intention of the testator, if possible.

2. It may be a general rule, although not unquestioned, that where the
,donee of a fund, with a 'general power of appointment, has executed
that power, the fund is chargeable with the debts of the donee; but,
*quere,* is there a *general* power of appointment where, by the terms of
the trust, the donee cannot exercise it for his own benefit during his
lifetime ; and

3. *Held,* that, where an estate is devised to an executor in trust for a devisee
named, to the use of such devisee for life, with power of appointment
after death, and the power is exercised, the estate cannot be charged
with the debts of the devisee, which existed *when the power was created.*

This was a suit in equity brought by J. G. Benedict, Admin-
istrator of Sarah Wales, in behalf of himself as such administra-
tor, and other unsatisfied creditors of the estate of Henry Bow-
dish, against Asaph D. Hayward, executor of and trustee under
the will of Lora Bowdish, and George L. Harrington, adminis-
trator of the estate of the said Henry Bowdish, deceased, and
Candace A. Bowdish, widow of the said Henry Bowdish. The
defendant Hayward demurred to the bill. The defendant
Candace answered. The case was heard at the January Term,
Addison County, 1887, upon the pleadings. Rowell, Chancellor,
*pro forma,* dismissed the bill as to both these defendants, with
costs. The orator appeals.

*W. H. Bliss,* for the orator.

1. The effect of the devise in this case was to give Henry
Bowdish the life use of the estate with a general power of ap-
pointment. 1 Sugd. on Powers, (472), (482), (483), *Rex* v *The
Marquis of Stafford,* 7 East. 531 ; *Lynn* v. *Ashton,* 1 R. & M.
188; *Alexander* v. *Young,* 6 Hare 393 ; *Barford* v. *Street,*

16 Ves. 135; *Platt* v. *Ruth*, 6 M. & W. 789; *Jenney* v. *Andrews*, 6 Maddock 264; *Williams* v. *Lomas*, 16 Beav. 1; *in re* Harvey's Estate, L. R. 13 Ch. Div. 220; *Johnson* v. *Cushing*, 15 N. H. 298; *Clapp* v. *Ingraham*, 126 Mass. 200; *Knowles* v. *Dodge*, 1 Mackey (D. C.) 66.

2.   That power was duly executed by the said Henry in his lifetime. 1 Sudg. on Powers (247); *Saunders* v. *Owen*, 3 Salk. 467; see also the very satisfactory note of the American editor, 1 Sudg. on Powers (248); note (1).

3.   When a donee has a general power of appointment, and exercises it, the fund thereby becomes a part of his estate and chargeable with his debts.   2 Sudg. on Powers (27); *Platt* v. *Ruth, supra ; Bainton* v. *Ward*, 2d Atk. 172; *Townshend* v. *Windham*, 2 Ves. S. R. 8; *Jenney* v. *Andrews*, 6 Maddock 264; *Fleming* v. *Buchanon*, 3d De Gex, Macnaghten & Gordon (52 Eng. Ch.)   This and see cases *supra*.   2 Jarman on Wills 622; 3 Williams on Executors (bottom) p. 1685–6; 2 Sudg. on Powers, 27; 4 Kent. Com. 339; 1 Story Eq. Jur. 188, note.

It is no answer to the authority of these cases to say that the intention of the testatrix would be defeated.   She is presumed to have known what the effect of her devise was in law.   Again this is an executed trust, and the law of property, not the intention of the settlor must control. 1 Perry on Trusts, Sec. 359, *Choice* v. *Marshall*, 1 Kelley (Ga.) 97; *Schoonmaker* v. *Sheely*, 3 Hill (N. Y.) 165; *Kingsland* v. *Rapelye*, 3 Edw. (N. Y.) 1; *Brant* v. *Gelston*, 2 Johns. Ca. (N. Y.) 384; *Hallett* v. *Thompson*, 5 Paige Ch. (N. Y.) 583; *Tillinghast* v. *Bradford*, 5 R. I. 205; *Smith* v. *Moore*, 37 Ala. 327.

Neither is it true that under this devise the devisee could not appropriate this estate to himself.   He could convey his life interest and execute the power of appointment in favor of that grantee. *Lyman* v. *Ashton*, 1 Russell & Mylne, 188; *Sturgis* v. *Corp*. 13 Ves. 190; *Alexander* v. *Young*, 6 Hare 393; *Brandon* v. *Robinson*, 18 Ves. 249; *Smith* v. *Moore*, 37 Ala. 327; *Hallett* v. *Thompson*, 5 Paige Ch. 583; *Forbes* v. *Loth-*

*rop,* 137 Mass. 523 ; 1 Perry on Trusts, 3d Ed., ss. 386 and 388 a, and notes.

The only cases in which this very question has been before the courts of this country have been decided according to the contention of the orator. *Johnson* v. *Cushing,* 15 N. H. 298 (1844) ; *Clapp* v. *Ingraham,* 126 Mass. 200 (1879) ; *Knowles* v. *Dodge,* 1 Mackey D. C. 66 (1881).

*Stewart & Wilds,* for the defendants.

The court should so interpret the law as to carry out the manifest intention of the testatrix. *Clark* v. *Peck,* 41 Vt. 152.

It was not her intention to establish a general, but a limited power. 1 Sugden 471.

In no one of the cases cited in support of this doctrine has the doctrine. been invoked to defeat the will of the testator, as it would here.

Granting that this doctrine is firmly established in the jurisprudence of England and some of our sister States it ought not now to be incorporated into the law of this State. It is not " applicable to the local situation and circumstances " here. Lora Bowdish owned this estate. She had a perfect right to say that her brother should have the use of it while he lived, and that at his death it should go to whomever he might designate. It was no fraud upon his creditors to permit him to say what should be done with that which he never owned, and which they never could have taken in satisfaction of their debts.

Our courts should repudiate this doctrine as they have the rule that where the income of a trust estate is given to a person for life such estate can be charged in equity for his debts, notwithstanding any provision to the contrary in the provision of the trust. *White* v. *White,* 30 Vt. 338 ; *Roberts* v. *Hall,* 35 Vt. 28 ; *Van Amee* v. *Jackson,* 35 Vt. 173 ; *Nichols* v. *Eaton,* 91 U. S. 725 ; *Hyde* v. *Woods,* 94 U. S. 526 ; *Broadway Bank* v. *Adams,* 133 Mass. 172.

The opinion of the court was delivered by

VEAZEY, J.  This is an appeal from chancery.  One defend-
ant demurred to the bill, and the other made answer.  This con-
stituted the record upon which the decree was made.  From the
bill as qualified and supplemented by the answer, not traversed,
it appears that on the 6th day of February, 1880, Lora Bowdish,
being possessed of a farm situate in Weybridge, of 50 acres with
a dwelling house and the usual outbuildings thereon, of the
value of $3,000, some live stock, tools, furniture, and personal
property, sufficient to pay her debts and funeral expenses, made
her will and shortly thereafterwards in the same year, died, at
said Weybridge.

At the time of the execution of the will, Lora's brother, Henry
Bowdish, was insolvent, was owing the orator's debt, and nearly
all the other debts, subsequently proved against his estate, all of
which was known to the testatrix, Lora.

Under these circumstances, Lora, by her said will, after direct-
ing the payment of her debts and funeral expenses, gave her
estate to her executor in trust for her brother Henry, "the said
Henry to have the use and occupation of said estate during his
natural life, and at the said Henry's death the said estate to be
conveyed by the said Hayward (executor) to whom and in the
manner the said Henry shall direct."

Another clause provided that in the event of the brother
Henry's death before that of the testatrix, all her estate should
be divided equally among the children of another brother.  The
testatrix died first ; the brother Henry occupied and enjoyed the
farm during his life, and, within about two years after the exe-
cution of said will, himself died, having properly appointed the
farm to his wife Candace.

Henry's creditors now claim the right to charge the farm with
his debts ; and this upon the proposition that where a man has a
*general* power of appointment over a fund, and he actually
exercises his power, whether by deed or will, the property
appointed shall form part of his assets, so as to be subject to

the demands of his creditors, in preference to the claims of his legatees or appointees. 2 Sugden on Powers 27.

In construing this will, the first inquiry is as to the testatrix' intention in creating this *trust* in the executor. "We are not to look at the words alone to ascertain the intent, but the language used is to be considered in connection with the situation of the parties, the surrounding circumstances, the subject matter, the object to be accomplished, etc." PIERPOINT, Ch. J. in *Clark* v. *Peck*, 41 Vt. 152. But all the cases agree that the intent of the testator is to be ascertained and followed in giving construction to a will." REDFIELD, J. in *Richardson* v. *Paige*, 54 Vt. 373.

In the light of the relation and situation of the parties, Henry's insolvency, known to the testatrix, the devise to the trustee instead of directly to the beneficiary, the kind and value of the property, it is plain that her intention was simply to provide for his life support by the use and occupancy of the property, without interference of creditors and without power of disposition in their behalf or for any purpose whatever, to take effect while he lived. The title was put in the trustee for the benefit of the brother by his *occupancy* while he lived. We think the words of the will, construed in the light of the circumstances, do not import a purpose to create, in behalf of the brother, any greater beneficial use than that to be derived by occupancy. The trustee could convey to an appointee only after Henry's decease. "And at said Henry's death the said estate is to be conveyed," etc., is the language.

It is more than unreasonable, it approaches absurdity, to suppose that this testatrix, the circumstances considered, intended, by giving the power of appointment, to give Henry the right to convert to his own use in his lifetime the entire estate by a sale of the remainder and then confirm the title in the vendee by appointment.

The fact of the trust in the form expressed negates such purpose, and the language and circumstances all point to a design to limit him, in his beneficial use, to the occupation of the farm

during his life, and that then the property should go from her through the trustee to the person appointed by the donee of the power as prescribed.

In short we are unable to see any indication in the will, or to believe, that the testatrix intended or expected that she was making a disposition of her property which would put it within the reach of her brother's then creditors. Her idea and intent was to furnish him a home and support during his life so far as her little property would do it, and not to pay his existing debts.

We come to this conclusion without doubt.

The question therefore is whether the obvious intention, independent of legal rules, is so in contravention of them that it cannot control the construction.

This is not a case where the action of the testatrix or the beneficiary misled or furnished the basis of a false credit. It is not material to decide whether the donee of the power might have realized upon the equitable life interest by sale, or enjoyed it other than by use derived from occupancy.

The orator stands on the proposition of law first above stated, and insists that Henry could have sold the estate at any time and conveyed an indefeasible title in fee simple, and thereby have had the entire beneficial interest in the property in his life time. That in short, quoting from the brief, "it is the clearest possible case of an absolute equitable estate entirely unfettered by any restriction in alienation or exemption from liability for debts," and the counsel cites many authorities, but argues especially among others *Barford* v. *Street*, 16 Vesey 135 ; and *Alexander* v. *Young*, 6 Hare 393.

In the first case the bill was filed by the beneficiary Mary Barford against the trustees, praying that she might be declared entitled to the estate, and a conveyance accordingly ; and it was so decreed, upon a clause in the will providing that after the decease of the testatrix, the trustees should convey the residue of the estate " to and among such person or persons, and in such proportions and at such time or times, and in such manner, as Mary Barford in her lifetime shall from time to time by any

deed, writing, or by her last will and testament, limit and appoint." The Master of the Rolls easily decided in favor of the oratrix upon "the clear and express words by which the power was given to the devisee to dispose of this estate in her lifetime," but intimated that the rule would be different if the will instead, had plainly indicated an intention that the estate should remain in the trustee for the life of the beneficiary. We fail to see, using the forcible language of the able brief of the orator's counsel, in another connection, how the case is "within shouting distance" of the case at bar.

In the other case, *Alexander* v. *Young*, stock was bequeathed directly to a married woman for her separate use for life, and, after her decease, upon trust for such persons and for such purposes as she should by deed or will appoint, but in case any appointment should be made by deed, the same not to come into operation until after her death. She conveyed by mortgage, and she and the mortgagee filed a bill praying a transfer of the stock to the mortgagee. The question was whether the words shall not "come into operation until after her death," prevented her from making an irrevocable deed. The court said no, and ordered transfer of the fund, according to the prayer.

In the case under consideration the trustee holding the legal title could convey only after the life beneficiary died. The latter had neither legal nor equitable title beyond the life estate. He had only power to direct the appointment, to take effect after his death in a deed to be made by the trustee then and not before. Of course a person cannot convey equitable estate that he has not got. If this donee of the power obtained credit on the strength of an appointment to the creditors it is easy to see that equity would fasten on to the property for the benefit of that creditor.

It is quite obvious that the orator must depend on the proposition that here was an unqualified general power of appointment duly executed, and that in such case equity will charge the property in behalf of creditors as against the appointees.

This proposition has been reiterated by many judges and legal writers, and is spoken of as a well settled rule in English chancery. It stands on the ground, as alleged, that where one has the control of the disposition of property as he pleases though not his own, it is inequitable that he should exercise such control in favor of mere volunteers and make no provision for his creditors. This, however, has been vigorously attacked, as in the case of *Commonwealth v. Duffield*, 12 Penn. St. 277, Gibson, Ch. J., on the ground that the argument is addressed only to a moral sense of duty; that such fund is not legal assets of the appointor, for it does not go into the executor's hands in course of administration; that it could not be a part of the appointor's effects while living, and cannot be so when he is dead, for a title which did not vest in him when he had capacity to take could not vest in him when his capacity was lost; that the appointee derives title immediately from the donor of the power, by the instrument in which it was created, and consequently not under, but paramount to the appointor, by reason of which it is impossible to conceive that the appointor's creditors have an equity; that when one is authorized in a will to direct by appointment the testator's property to any person within the limits of his discretion, any interference that thwarts the exercise of that discretion necessarily impedes disposition pursuant to the intent; that therefore by a diversion to creditors against the direction of the appointor, the testator's intent would be frustrated and not effectuated; that it is his bounty that the donee of the power has to deal with; that the thing, so to speak, given to the donee is power not property; that it is no sufficient answer to say that it becomes property of the donee by the exercise of the power; that any other view is an oversight of the broad line of distinction between property and power; that the property if diverted to creditors of the donee of the power, does not go to whomsoever the donee appoints, as the will directed, but to persons he has not appointed; that the question is not what the donee of the power ought, in morals, to have done as between his creditors and a volunteer, but simply whether he appointed as the will provided.

Judge Story says in a note to section 176, in'his Eq. Jurispru-dence : " Why when the party executes a power in favor of others, and not of himself, a court of equity should defeat the intention, although within the scope of the power, and should execute something beside that intention and contrary to it, is not very intelligible. Why should a court of equity restrict this right of election, if *bona fide* made ? Is not this to create rights, not given by law, rather than to enforce rights secured by law ? "

But he and other authors yield to the fact of the existence of the rule, where the power of appointment is general and not restricted. Vol. 3, Williams' Executors, p. 1685 ; 1 Kent 341. The authorities, however, do not agree that it is general when the donee cannot exercise it for his own benefit during his life. In vol. 1, Sugden on Powers, the author says : " A general power is in regard to the estates which may be created by force of it, tantamount to a limitation in fee, not merely because it enables the donee to limit a *fee*, which a particular power may also do, but because it enables him to give the fee to whom he pleases ; he has an absolute disposing power over the estate, and may bring it into the market whenever his necessities or wishes may lead him to do so." In Jeremy's Eq. Jur. 377, it is said : " But it is still to be remembered that the power of appointment must be general, or such as he may execute for any purpose whatever, for if the power be limited in any such manner that he cannot, by execution, secure the benefit to himself, there is no pretense for his creditors to claim it ;" and the author cites *Ld. Townshend* v. *Windham*, 2 Vesey, s. 10, where the language of Ld. Chancellor Hardwicke appears to sustain the principle asserted. On the other hand, in *Johnson* v. *Cushing*, 15 N. H. 298, and *Clapp* v. *Ingraham*, 126 Mass. 200, it was said that it was immaterial that the donee could not appoint to his own use or the use of any one to take effect in his lifetime.

In the New Hampshire case the facts were similar to the facts in this case, except it did not appear that the creditors of the donee of the power seeking the relief were creditors when the will was executed. One of the grounds of defence was that the

power was not general because the donee could not appoint to the use of himself or any one else to take effect in his life-time. Chief Justice Parker there recognized that there " is in some of the books matter having tendency to support this ground of defence," and quotes the language of Jeremy, *supra*, and says : " Other books hold a language similar." He then proceeds to discuss the case of *Townshend* v. *Windham, supra*, at length, and admits that the language of Lord Harwicke, if taken disconnected from the facts to which it refers, would undoubtedly appear to sustain the principle asserted, but insists that the case does not bear such interpretation. Notwithstand-ing our profound respect for the views of this great jurist, we are unable to concur with his understanding of the case. There the testator was entitled to a large estate for life, remainder to sons in tail male, remainder to his nephew in tail, with limitations over. He had daughters but no sons. In 1734, after probabil-ity of sons had passed, he let the nephew into possession of part of his life estate, in consideration of natural love and affection, but, as expressed, without pay ; the nephew thereupon covenant-ing that he would permit such person as his said uncle should, by deed or will, in his lifetime, appoint for that purpose, to enter and receive the rents and profits of the estates for so long a time as the nephew should enjoy it in the testator's life. The uncle appointed it, by deed, to the use of his daughter, through trus-tees, and died in 1746, the nephew having thus enjoyed the use twelve years. The question was whether this twelve years' inter-est in the nephew's property was part of the assets of the testa-tor, the uncle, or a good appointment to the daughter, and it was held to be assets of the testator's estate, in favor of creditors.

We are unable to see wherein the transaction between the uncle and nephew was not in substance a mere rental of the uncle's life estate. To say it was without consideration except love and affection is absurd in the face of the nephew's agreement. . The consideration, instead of money, was to be the use for an equal time after the uncle's right should expire by his decease. The

uncle had no original right of appointment of the remainder, in the conveyance, whatever its form was, of the life estate to him.

The life estate was his absolutely and the use and income of it would have increased his assets. It seems to us the case in effect was an attempt by the father to secure his estate to his daughter as against creditors by giving up the use of a life estate during a period . of his life in consideration that he might appoint the use of the same property for an equal term after his death. It was in other words a transaction as to his own property in fraud of his creditors. It was therefore quite different from the exercise of power as to another man's property. If the transaction between the uncle and nephew be treated on the part of the uncle as a gift of the use to the nephew without consideration other than love and affection, and the covenant from the nephew as simply a donation of power by him to the uncle in respect to the nephew's property, then the case is a full authority in support of the orator's claim in this case. But we think it was one trans-action, and the obligation of the nephew was not independent of the transfer of the use to him but was in consideration of it. Therefore the benefit of that obligation must enure to the uncle's estate. These facts well account for the language of Lord Hardwicke. He says : " Here the testator had the power to appoint the benefit of the covenant, or in the other light- of this chattel interest in the land, to. take effect out of the remainder in tail, generally to any person, or to take it to himself ; he appoints it not to himself, but merely voluntarily to a daughter, to take effect after his death, as it could not be otherwise ; in respect of his creditors it must be considered as part of his estate at the time of his death, he having executed so as to gain the interest to himself and attempted to pass it at the same time to his daughter, the court will not suffer it, saying he has been guilty of a fraud.as to them, being indebted at the time." In the case, *Clapp* v. *Ingraham*, *supra*, the power was not created in a will. It was a provision in a contract between an insurance company and one Head as trustee of one Mrs. Ingraham. The company received a sum of money from this trustee and agreed to pay the

(3)

income to this woman during her life, and the principal, after her decease, to such persons as she should direct in her will. It does not appear in the report of the case what was the source of this money or who created the original trust or upon what terms, or but that it was her own money when it passed into the hands of Head as her trustee, or but that the application of the general proposition relied upon was demanded in order to defeat an attempt to keep her own property from going to pay her debts. All that appears is the contract between the trustee and the insurance company.

If the cases from New Hampshire and Massachusetts are to be regarded as controlling the case at bar, then we must hold not only that the power of appointment in the will in question is general, within the meaning of the rule, but that the rule is applicable notwithstanding its application would defeat the intention of the testator and would subject property, which the donee of the power never owned and which never formed the basis of his credit, to the payment of the debts of his estate as against the appointment made pursuant to the will and in furtherance of it. The argument for such a holding is that the testatrix invested the donee of the power with *all* the attributes of ownership of the property; and that he exercised dominion over the property as though it was his own.

There is no distinction between ownership and *all* the attributes of ownership. But it was never held that the appointee derived his ownership from that of the donee. It comes from the donor upon exercise of the power by the donee. One attribute of ownership is title; another the unrestricted right of disposition. This donee had neither of these, therefore he was not invested with *all* the attributes of ownership. He was never the owner. The first assumption of the argument is therefore false. The second has a modicum of plausibility, but little truth. In his instrument of appointment the donee of the power says: " In furtherance of the will of my late sister, Lora, I direct," etc. He does that which by the will he is qualified to do, not as if it

was his own property, but as if it was the property, as it in fact was, of the testatrix. It is forced to say he dealt with it as his own.

The early English cases where the doctrine originated were plainly different from this case. They were generally cases where the power was reserved to the settlor out of his own property, whereby, if sustained, he would place it beyond the reach of even his future creditors, or else the donee of the power enjoyed something more than the mere exercise of it and had an actual consideration as in *Townshend* v. *Windham, supra,* or the provision conferring the power was held to be sufficient to carry the property itself to the donee of the power.

The first case is, *Ashfield* v. *Ashfield*, 2 Vern. 287, where there was a voluntary settlement by Ashfield of his own personal estate in trust to such uses as he by deed or will should appoint. He afterwards by will appointed to his wife and children. It was held to be assets of the estate and liable to the debts of the husband, and the devise to the wife and children was only in the nature of a legacy. The donee of the power was its author who in substance attempted to give away his property in disregard of his own creditors.

In the same volume, page 319, is the case of *Thompson* v. *Towne*, often cited. The case is stated in the report thus : " J. S. on sale of land takes a bond from the purchaser to pay any sum of money not exceeding £500, as he should by will appoint. And afterwards by will distributes it and appoints payment to several of his relatives. J. S. having power to dispose, the £500 must be looked upon as part of his estate and decreed to be assets liable to the plaintiff's debts."

It is in this clumsily reported case that the expression "having power to dispose," first appears. There is the beginning of the growth of the doctrine that a general power to appoint, once exercised, creates ownership.

The substance of the case seems to be simply that where the grantor of land provides that the consideration should be paid

to persons whom he should appoint, and he does appoint, the creditors of his estate shall hold it as against the appointee.

Precisely the same in substance is the case of *Lassels* v. *Cornwallis*, in the same volume, page 465. *Hinton* v. *Toye*, 1 Atk. Ch. 465, is a case where a wife appointed a certain sum to be paid to her husband, " to be employed by him in such charitable uses, or other purposes and intents as he should think fit," and the money was passed to him. While thus holding the fund he devised to the defendants. Where money is given to one to be used as he pleases, it might well be considered as an absolute gift, and the Master of the Rolls might well say as he did, " So no stronger instance can be given, than the present to prove ownership and property."

In *Bainton* v. *Ward*, 2 Atk. 172, Ward had the power to charge his wife's estate £2,000 in his lifetime or by will at his. death. He could raise it for his own use at any time. As the chancellor there said : " This money was not settled at all, but absolutely in the power of Ward." The power was by settlement, after marriage, as follows : " Provided always that George Ward shall, by appointing two trustees, under any deed in his lifetime, or by his will at his death, charge all the wife's estate with a sum not exceeding £2,000."

We here find the first full statement of the proposition upon which the orator relies. Lord Hardwicke says : " Where there is a general power given or reserved to a person for uses, intents and purposes as he shall appoint, this makes it his absolute estate, and gives him such dominion over it as will subject it to his debts."

In respect to this, Maddock, in his Treatise on Chancery, says that no such general proposition was necessary to the decision, nor is it considered as correct. 1 Mad. Ch. p. 608.

It will be noted that this proposition is first stated in a case where the donee of the power had the right to exercise it for his own unrestricted benefit while he lived.

*Fleming* v. *Buchanon*, 3 De Gex M. & G. 976, is not very helpful as the nature of the power does not appear except in these words: " and having a general power of appointment." And further it was a decision, so far as it pertained to an appointed estate, under the statute known as Sir John Romilly's Act, which is set out in the report of the case.

Many of the other English cases usually cited in support of the general statement of the doctrine in the elementary books, are cases where the general rule was recognized, but they did not involve a decision as to its scope or application, as in *Holmes* v. *Coghill*, 9 Ves. Sen. 498, where the question was as to the proper execution of the power. And in *Thorpe* v. *Goodall*, 17 Ves. Jr. 388, where it was held that a bankrupt seized for life with a general power of appointment, with remainder, in default of appointment, to the heirs of his body, cannot be compelled to execute the power for his creditors.

And in *Harrington* v. *Hoste*, 1 Cox Ch. 131, where the only decision was that when no steps have been taken to appoint or dispose of the fund, the court could not arrest it *in transitu*, even for creditors. And in *Tomlinson* v. *Dighton*, 1 P. Wms. 149, where the question was whether there had been a good execution of the power. And in *George* v. *Milbank*, 9 Ves. Jr. 190, where the decision was that the equity of a purchaser from a party taking under a voluntary deed of appointment, was preferred to that of general creditors. This was also a case where the power to appoint was reserved to the owners in their conveyance.

Applying the rule well expressed by Chief Justice Marshall, that the positive authority of a decision is co-extensive only with the facts on which it is made, it is plain that the above cases fall far short of the demand in the case at bar.

But it is equally plain that in later cases the substantial equity in legal sense upon which the rule originally rested and not upon a mere moral duty was lost sight of or disregarded, and its scope and application extended by degrees, and the definition of a general power given by Sugden and the limitation of its proper application stated by Jeremy and recognized by Maddock and

other jurists, has been greatly infringed by later judicial decisions, so that some of them now cover this case in all respects except the single point that the creditors here were such before the will was made, and therefore the power conferred on the appointee was no inducement of the credit.

To apply the rule to this case would be taking another step in advance of a line of decisions which we think rest in technical reasoning and unwarranted assumption. So far as the rule is clearly established in its application the will must be taken to have been made in reference to it, but not beyond, unless equity demands further extension of application. We fail to see that it does, or wherein these creditors have any equitable right to this property. The intent of the testatrix was in contravention of no settled rule of law applicable to this case. The questions here debated have never before received judicial consideration in this State.

As to how far this court will go in applying the general doctrine in behalf of creditors as against appointees where the credit is subsequent to the creation of the power, it is not necessary now to intimate.

*The pro forma decree dismissing the bill is affirmed, and cause remanded.*

NOTE.—Since writing the foregoing opinion, I have found an old book entitled: "A Treatise of the Administration of Assets in Equity," by Holker Megginson, Esq., of the Middle Temple, in which the English authorities *supra* and others are discussed, and the whole subject ably treated.

W. G. V.