2013 VT 95

## In re Estate of Doris H. Fitzsimmons
## (Joanne Fitzsimmons Balkam, Executor, Appellant)

[86 A.3d 1026]

No. 12-192

Present: **Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Zonay, Supr. J., Specially Assigned**

Opinion Filed October 18, 2013

*Richard Linton Brock* and *Thomas Dawson Brock* of *Brock & Brock, PLLC*, Montpelier, for Appellant.

*James W. Swift* and *Cara L. Cookson* of *Langrock Sperry & Wool, LLP*, Burlington, for Appellees.

¶ 1. **Dooley, J.** Appellant Joanne Fitzsimmons Balkam appeals the superior court's partial summary judgment decision which reversed a probate court decision that had granted her permission, as executor of her mother's estate, to physically partition and sell parts of a real estate property to make a division between the heirs of her mother's residual estate. The appellees are two of her brothers, Dennis and James Fitzsimmons. We reverse and remand.

¶ 2. The facts related to this appeal are simple enough. Doris Fitzsimmons, a resident of New York, died testate on August 9, 2006. The will named Joanne Fitzsimmons Balkam as executor, and was probated in New York. In addition to the property that she owned in New York, decedent owned real property in Wells, Vermont, consisting of a farmhouse on a property of roughly 300 acres — the exact acreage is disputed, as discussed below. In March 2007, executor submitted the will to the Fair Haven District Probate Court — which no longer exists, but has been subsumed into the probate division of the superior court — for

proceedings under an ancillary estate. The probate court admitted the will for proceedings and designated Joanne Fitzsimmons Balkam executor in Vermont as well.

¶ 3. Under the will, the Wells property is not devised specifically to any person or persons, but is instead part of the residual estate. The residuary clause of the will provides:

> I give . . . the residue . . . of my estate . . . to my beloved children, JAMES J. FITZSIMMONS JR., DENNIS M. FITZSIMMONS, KEVIN R. FITZSIMMONS, and JOANNE FITSZIMMONS [sic] BALKAM . . . in as nearly equal shares as possible, the division thereof to be determined by any executors acting hereunder, if the interested parties cannot agree . . . .

Regarding the powers of executor, the will provides: "I hereby grant to any executors at any time acting hereunder, full power and authority to retain, manage, and administer my estate as freely as I could handle my own affairs if living." It also explicitly gives the executor a power of sale:

> For any purpose, to sell for cash or on credit, exchange, lease for any term of years (including a term greater than authorized by statutory law), mortgage or extend or modify the terms of mortgages on any real or personal property or interest or estate therein at any time forming a part of my estate, and to execute such instruments as may be necessary or advisable.

Nowhere does the will mention any specific power to partition, although executor argues that the explicit power of "division" provides that power. It does, additionally, grant executor the power "[t]o make distribution in kind or in cash, or partly in each, among the persons entitled to share in my estate."

¶ 4. By letter of August 19, 2009, executor proposed to the other heirs that she would take 110 acres of property, Kevin Fitzsimmons would take another 36-acre parcel, and all four beneficiaries would either sell the remaining property and divide the proceeds or take it by decree, with executor and Kevin taking smaller shares to equalize the value of each sibling's distribution. On June 29, 2010, Dennis and James filed a Motion for Decree of Distribution, proposing instead that all four named beneficiaries be made tenants in common. Executor opposed this motion, citing

the need to complete a survey of the property and emphasizing her position that the will gave her the power to physically divide the property. Dennis and James then filed an Objection to Accounting on August 13, 2010, in which they charged executor with waste and objected to her calculation of attorney's fees and inclusion of maintenance fees in an accounting that she had submitted. In a supplemental memorandum filed September 10, 2010, executor presented a new partition plan in which she proposed to divide the property into three parcels, sell the parcel including the house and split the proceeds, and divide the rest of the property equally, giving one specified parcel to her and Kevin and the other to Dennis and James.

¶ 5. The probate court issued an order on November 18, 2010 allowing executor to proceed with her partition plan but requiring that Dennis and James have the first choice between the subdivided parcels without the house. It also denied the waste claim and the objection to the accounting. On November 29, 2010, Dennis and James filed a motion for reconsideration/clarification, but before the court issued any response, executor filed a notice of appeal to the superior court. On January 6, 2011, the probate court issued a clarification of the court order, and on January 14, 2011, Dennis and James filed their own notice of appeal to the superior court.

¶ 6. The issues raised in executor's appeal were whether the probate court had the power to allow the heirs to choose which property they received and whether the executor had the power to contract for a survey. In their statement of questions, Dennis and James raised five issues. The first two contested the probate court's ruling on their claim of waste and their claim that the accounting was flawed. The last three addressed the power of the executor and the probate court with respect to the distribution of the property: (1) whether executor had the power to subdivide the estate; (2) whether executor's proposed division met the requirement of the will that the estate be distributed into "as nearly equal shares as possible"; and (3) whether the probate court's division was proper under its power to partition in 14 V.S.A. § 1729.

¶ 7. Appellees filed a motion for partial summary judgment and renewed their request for a decree distributing the property to the four beneficiaries as tenants in common. In addition to her response to this motion, executor also later filed a motion for

license to sell real estate. In a decision filed May 2, 2012, the superior court granted appellees' motion for partial summary judgment and denied the motion for the license to sell real estate. It disagreed with the probate court and found that because legal title to real property passes to beneficiaries immediately upon the death of a testator, the executor had "limited ability to affect the beneficiaries' ownership of the real property" and could not partition the property. It referred the waste and accounting issues back to the probate court because the probate court had not addressed them — an action which all parties agree on appeal was a mistake because the probate court had addressed those issues. Whether or not by mistake, however, the trial court did not take up all the issues before it. On May 11, 2012, Dennis and James filed a motion to reconsider the remand to the probate court, asking the superior court to deal with the remaining issues. Executor did not respond to that motion, but instead filed a notice of appeal to this Court on May 31, 2012, requesting that we reverse the trial court's summary judgment order regarding executor's power to partition the property.

¶ 8. The first question with which we must grapple is whether this case is properly before us. After the notice of appeal was filed, appellees moved to dismiss because they contended that the decision below was not a final judgment in that it did not resolve all the issues in the case. We decided to consider this motion along with the merits.

¶ 9. ■ We conclude that appellees are correct that the decision on partial summary judgment was not a final judgment, because it does not "make[ ] a final disposition of the subject matter before the Court." *Woodard v. Porter Hosp., Inc.*, 125 Vt. 264, 265, 214 A.2d 67, 69 (1965). No particular analysis is needed to make this decision — the order states in clear language that it is for partial summary judgment and that "this ruling addresses only three of the five questions in [appellee]'s Statement of Questions." Therefore, it is not ripe for appeal. See *Hospitality Inns v. S. Burlington R.I.*, 149 Vt. 653, 656, 547 A.2d 1355, 1358 (1988) ("[A] final judgment is a prerequisite to appellate jurisdiction unless the narrow circumstances authorizing an interlocutory appeal are present.").

¶ 10. ■ However, we agree with executor that the circumstances of the case are such that we should decide the merits

under Vermont Rule of Appellate Procedure 2. We have previously described the situations in which we will not apply the rule that appeals of interlocutory orders may be made only by permission by the trial court: "[W]here dismissal of the appeal would most likely result in another appeal after final judgment, the merits of the questions of law were fully briefed and argued before the Court, and the Court has spent valuable time preparing for the case." *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 251, 719 A.2d 415, 417 (1998).

¶ 11. ■ Here, these factors are met. The issue of an executor's power to divide property is generally one of first impression in this Court and is central to this case. The unresolved issues are separate and less important. If we dismiss this appeal, the central issue will almost certainly return on appeal of the final judgment. The question was extensively briefed and argued on both sides, and this Court invested time in preparing for the case. Given these circumstances, we deny appellees' motion to dismiss.[1]

¶ 12. Before addressing the main legal issues of the case, however, we must first consider the executor's argument that the trial court incorrectly found that "[t]he facts material to this motion are not in dispute," and that summary judgment was improperly granted for that reason. We review summary judgment rulings de novo, using the same standard as the trial court. *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 13, 178 Vt. 244, 882 A.2d 1177. Summary judgment is appropriate if, after reviewing the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," the movant "show[s] that there is no genuine issue as to any material fact" and the movant "is entitled to judgment as a matter of law." *Id.* (quotation omitted); V.R.C.P. 56(a). The executor asserts two facts that are in dispute: the acreage and the appraisal value of the property.

¶ 13. ■ ■ An issue of fact "is material only if it might affect the outcome." *N. Sec. Ins. Co. v. Rossitto*, 171 Vt. 580, 581, 762 A.2d 861, 863 (2000) (mem.). Here, the issue on partial summary judgment had nothing to do with either the acreage or the appraisal value — it was a legal question as to whether executor

---

[1] We note, also, that appellees in oral argument represented that they did not object to this Court denying the motion to dismiss and considering the case under Vermont Rule of Appellate Procedure 2.

had the power to physically partition the land.[2] The acreage and appraisal value cited by executor cannot therefore be considered facts material to the motion, and the trial court properly granted partial summary judgment.

¶ 14. We now turn to the main questions in this appeal. In doing so, we stress that we face two types of arguments in this case. The first type relies upon the general policy that we must implement the intent of the testator as far as possible. All parties make arguments under this general policy. The second type relies on limits on the testator's power to control the administration of the testate estate through testamentary provisions — that is, it calls upon the courts to overrule the testator's intent. The superior court decision has elements of both of these arguments, although we read it as primarily based on acceptance of the argument that the executor cannot be given the power to partition the property because real property *must* be passed immediately to the devisees. It can be read also as concluding that the testator intended to pass the real property in Vermont to the four devisees as tenants in common. Thus, we must examine both rationales.

¶ 15. We also stress that we are deciding a somewhat artificial question in this case, and that the artificiality affects the answer. Primary estate administration in this case occurred in New York, where testator was domiciled at the time of her death, and the will provisions in issue are general, applying to all of the estate property wherever located. Thus, executor's obligation to divide the property as equally as possible applies to the whole estate, not to any and every particular piece of property. The parties, however, have made arguments that require us to look at the property sited in Vermont in isolation from the rest of the property and as if it were the only property in the estate, and consequently to judge the fairness of their positions without considering the rest of the estate distribution.[3] While we will

---

[2] Executor is correct that the trial court's decision includes a number for the acreage of the property — 332 acres — that is in dispute. This is certainly a mistake, but it does not figure into the trial court's analysis of the legal issue in any way. It is not a ground to set aside the superior court decision.

[3] The parties have also acted under the assumption that Vermont law, and not New York law, controls all questions before us. We note, however, that there is a principle whereby the power to distribute is controlled by the law of the domicile of the testator. "The law of the donor's domicile has been held to govern the construction of a will insofar as the exercise of power of appointment is in

decide the questions presented under this constraint, our rationale must consider the will provisions as a whole.

¶ 16. We start with issues relating to the provisions of the will and the intent of the testator. Essentially, executor argues that these provisions give the power to executor to partition the property as she sees fit, within the general requirement that the division be "in as nearly equal shares as possible." Appellees argue that "as nearly equal shares as possible" means that the devisees must take the real property in Vermont as tenants in common.

¶ 17. ██ Our primary objective in construing a will is to determine the intent of the testator. See *Eckstein v. Estate of Dunn*, 174 Vt. 575, 578, 816 A.2d 494, 498-99 (2002) (mem.). In doing so, we consider all parts of the will, the relationship of the parties and the circumstances surrounding the execution of the will. See *id.* We first ascertain the intent of the testator from the language used in the will. *In re Estate of Barslow*, 128 Vt. 192, 196, 260 A.2d 374, 377 (1969).

---

question." 5 Page on Wills § 45.12, at 646 (2005). This principle is confusing when combined with the principle that the law of the situs applies to conveyances of real property. *Townsend v. Downer*, 27 Vt. 119, 123 (1855) ("[T]he conveyance of land, is to be made according to the law of the place of the land, that is, the *lex rei sitae*."). Therefore, "[a] difficult problem is presented if testator is domiciled in one state, and the land which he devises is situated in another state." 6 Page on Wills § 60.6, at 502; see *Blaine v. Dow*, 89 A. 1126, 1128 (Me. 1914) ("A will is presumed, in the absence of anything to the contrary, to have been drawn in accordance with the law of the testator's domicile and will be interpreted accordingly; but its effect and validity in respect to the disposition of real property situated in another jurisdiction or the creation of any interest therein will depend upon the lex rei sitae."); 6 Page on Wills § 60.6, at 504-05. However, given that all parties agree that Vermont law should be applied — and only to the real property in Vermont — we accept this assumption and decline to delve further into this question. In addition, we note that in cases where

> the courts of testator's domicile . . . may draw the same inferences from the language of the will and the surrounding circumstances that the courts of the state in which the land is situated would draw . . . no case of conflict of laws is presented. The rule which is common to the two states is applied, and it makes no difference whether it is thought of as the law of testator's domicile or as the law of the state in which the land is situated.

6 Page on Wills § 60.6, at 502-03. In this case we have drawn heavily from decisional law from the New York courts to indicate that there is no difference between Vermont and New York law on the key questions.

¶ 18. ▮ The phrase "equal shares," along with the phrase "share and share alike," is generally found to mean tenants in common. See *In re Spreckels' Estate*, 123 P. 371, 379 (Cal. 1912) ("[T]he word 'divide,' in and of itself, does not import an actual physical segregation into distinct shares. It is, when used in such phrases as 'to be divided between,' or 'divided in equal shares among,' or the like, very commonly used to express an intention to give interests to persons as tenants in common."); *Blaine v. Dow*, 89 A. 1126, 1128 (Me. 1914) (evaluating a will with the phrase "to be divided equally" and noting that "[p]rovisions for a division have always been regarded as sufficient to create a tenancy in common"); *Wesley Home, Inc. v. Mercantile-Safe Deposit & Trust Co.*, 289 A.2d 337, 342 (Md. 1972) ("[I]n wills the expression[ ] 'equally to be divided' . . . ha[s] been held to create a tenancy in common . . . ." (quoting *Gilpin v. Hollingsworth*, 3 Md. 190, 195 (1852))); *Delafield v. Shipman*, 9 N.E. 184, 186 (N.Y. 1886) (considering a will where the surplus was to be divided "equally" between various beneficiaries, and noting that "[s]uch language is always held to constitute the beneficiaries tenants in common").

¶ 19. However, "as nearly equal as possible" (or a similar phrase) has been interpreted to allow for physical partition. An excellent example is the New York case of *Guilbert v. Guilbert*, 124 N.Y.S. 564 (Sup. Ct. 1910). That will directed the executors "[t]o set apart one-half of the residuary estate as nearly as the same, in the judgment of my executors, can be set apart or apportioned" for one party, and used the same language to set out the other half in two one-quarter portions for other parties. *Id.* at 565-66. The will gave the executor power to sell "any and all of my real estate," and "for that purpose, to make, execute and deliver good and sufficient deeds of conveyance of such, real estate, or any portion thereof." *Id.* at 566. It also gave the executors the power to "join with any party or parties in the partition of any real estate owned by me with any other person or persons." *Id.* It did not, however, specifically give the power to partition real estate solely owned by the testator. Nonetheless, the court found that partition was proper because the language calling for portions "as nearly as the same, in the judgment of my executors, can be set apart or apportioned" allowed for the possibility of "apportion[ing] different parts of the real property . . . so as to produce the required fractional division as nearly as the language of the will required." *Id.* at 567. Particu-

larly, the court explained that, in a case where the residual estate included both real and personal property, "the deficiencies of one or more of the shares might have been made up from the personalty of the estate, or, for all that appears, one or more of the shares might have been made up entirely of personal property and the real property apportioned to the remaining share or shares." *Id.*

¶ 20. Another relevant New York case of the same vintage is *Potter v. Eames*, 126 N.Y.S. 787 (Sup. Ct. 1910). In that case, the will did not give a power to sell, but directed the executors to "divide my said residuary estate as nearly as may be, into two equal separate parts or portions, being one part or portion for the use of each of my two children." *Id.* at 788. Based on those words, and the absence of a power to sell, the court concluded, "the surviving trustee is limited in the execution of the trust to actual partition of the various parcels of real estate." *Id.* at 791. As explained by the court, this power is "not to divide a single lot or building into two parts, but to separate from the total or aggregate of the farms, lots, and buildings one part that will be substantially one-half of the value of the total number of properties." *Id.* While the parties in this case have debated the exact power of executor in light of the explanatory language, the main point of the *Potter* decision is that the divisional language, which is close to that used here, contemplated a physical partition rather than assignment of the property to the devisees as tenants in common.

¶ 21. This type of analysis of the phrase "as equal as possible" is common. The Supreme Court of California, in attempting to interpret whether a will that called only for division into "three equal parts" would allow for partition without that right being expressly given, surveyed cases from around the country and distinguished its case from those that had language such as "as equal as possible." See *Spreckels' Estate*, 123 P. at 379-80. It concluded: "None of these cases . . . is authority for the proposition that a mere direction to divide an estate into *three equal parts* imports a physical partition of the property, or a valuation and apportionment into heterogeneous shares of equal appraised value." *Id.* at 380 (emphasis added).

¶ 22. ▮ We conclude that the analysis of whether or not a will provides an executor with the power to partition is not limited to

a phrase like "equal shares" or "as nearly equal shares as possible." The Texas Court of Appeals came to a similar conclusion by focusing on other parts of the will and what those parts said about the testator's intention as to partition. In *In re Estate of Spindor*, 840 S.W.2d 665 (Tex. Ct. App. 1992), an independent executor attempted to make a partition of property between three residuary beneficiaries, relying on a phrase in the will that directed the executor to "divide [testator's] estate," which he was to do "equally [between testator's] three children." *Id.* at 666. The court found that because the language of the will did not "provide, in case of dispute or contest, how the matter shall be determined, . . . it cannot be said that the will provides a means for partition." *Id.* at 667 (quotation omitted).

¶ 23. In looking at all of the language of the will in this case, we note that in addition to the division power, the will adds "the division thereof to be determined by any executors acting hereunder." It gives the executor the power to sell real and personal property and "to make distribution in kind or in cash, or partly in each, among the persons entitled to share in my estate." There can be no doubt that these additional powers apply to distribution to testator's children under the residuary clause. If testator's husband had been living at the time of testator's death, the entire estate would have been devised to him with no division. If, as occurred, testator's husband predeceased her, the residuary clause came into effect, and it contemplated two allocations: the division in issue here, and the prior distribution of testator's jewelry to her daughter who is executor/appellant here. Thus, even if the real property in issue here were the only property, the executor was given the power to sell it in whole or in part for distribution.

¶ 24. A very important point, however, is that the property before us is not the only property. There was property, real and personal, in New York as well as in Vermont.[4] The standard "as nearly equal shares as possible" applies to all the property wherever located. The language does not require that each piece of property, real or personal, has to be divided equally between

---

[4] The superior court decision says that the only property in issue is the Vermont real estate. The record indicates, however, that there is also personal property, located in Vermont and physically present at the house on the real property, valued at $2018. Although no party has raised issues with respect to the personal property, we do not understand that its distribution has been settled.

the devisees. Its only requirement is that all the property must be divided as equally as possible.

¶ 25. ▉ Considering all parts of the will and the holdings from other courts, we find that the phrase "as nearly equal shares as possible" means that testator intended for executor to have the power to partition her real estate using her discretion as to creating equal portions of the residual estate, subject only to the court's oversight — discussed in the section below — as to whether she was complying with the terms of her special power. We reach this conclusion because of: the language of the equality standard; the fact that the equality standard applies to the whole estate; the language that explicitly states that the executor is to make the division, a task unnecessary if the will required that the devisees would take as tenants in common; and the provision giving the executor the power to sell and distribute in cash or in kind, powers inconsistent with automatic distribution to tenants in common.

¶ 26. Having determined that the will grants executor the power to divide the property in issue physically or to sell it in whole or in part to make the distribution, we turn now to the main holding of the superior court: that a fiduciary cannot have such a power with respect to realty because title to realty immediately passes to the devisees.

¶ 27. ▉ The superior court decision is based on a number of Vermont cases that hold that legal title to real property passes to devisees on the death of a testator. See *Lysak v. Grull*, 174 Vt. 523, 525, 812 A.2d 840, 843 (2002) (mem.) ("Legal title to real property vests immediately at death in the heirs, subject only to liens and legally enforceable debts of the estate."); *In re Callahan's Estate*, 115 Vt. 128, 134, 52 A.2d 880, 883 (1947) ("Under our law, the legal title of real estate owned by a person at the time of his death passes immediately to his heirs or devisees, subject to the lien of the administrator or executor thereon for the payment of debts, expenses of administration and other expenses legally chargeable against the estate, in case the personal property in the estate is not sufficient for that purpose."). The trial court then extended that logic to mean that an executor "has limited ability to affect the beneficiaries' ownership of the real property" and "does not have ownership powers with respect to real property in the estate." Therefore, it reasoned, the

executor "does not have the legal power to partition [the] real estate."

¶ 28. In our view, the superior court has read these cases to stand for a limitation on the power of the executor, whether or not provided in the will, even though the cases are not about that subject. In both *Lysak* and *Callahan's Estate*, the identity of the devisee(s) and the interest devised were known. This is true for our other cases employing the rule of immediate passage. See *In re Estate of Bettis*, 133 Vt. 310, 313, 340 A.2d 57, 59 (1975); *Dartmouth Sav. Bank v. Estate of Schoen*, 129 Vt. 315, 319, 276 A.2d 637, 639-40 (1971); *Spencer v. Lyman Falls Power Co.*, 109 Vt. 294, 299, 196 A. 276, 277 (1938); *Watkins v. Merrihew's Estate*, 99 Vt. 294, 298, 131 A. 794, 796 (1926); *Coolidge v. Taylor*, 85 Vt. 39, 51, 80 A. 1038, 1044 (1911); *Austin v. Bailey*, 37 Vt. 219, 222 (1864); *Roberts v. Morgan*, 30 Vt. 319, 326 (1858). Thus, the cases stand only for the proposition that immediate passage occurs when the devisees and their real estate are identified, but cannot apply when either is yet unknown. If we had ruled above that the will provides that all of the devisees will take the property as tenants in common as a matter of law, the rule of immediate passage of these estates would govern. But it cannot apply where the estates are as yet undetermined.

¶ 29. ■■■ The holding of the trial court also limits the probate court, essentially imposing a rule that the court has no jurisdiction over real property. The trial court's holding is inconsistent with the statute enacted by the Legislature to empower the probate court in exactly the circumstances present here. Namely, 14 V.S.A. § 1737 provides: "When the real estate of a decedent, or any part thereof greater than the share therein of any one of the heirs, cannot be divided without prejudice or inconvenience to the owners, proceedings may be had in the probate division of the superior court for the assignment or sale thereof." We view this power as an adjunct to the responsibility of the probate court to partition real property assigned to devisees "in common and undivided." *Id.* § 1729. The trial court's holding also appears to be inconsistent with the probate court's power to authorize the fiduciary to sell real property where it is beneficial and not required to pay "debts, legacies or charges of administration." *Id.* § 1653(a). Similarly, the trial court's holding is inconsistent with the fiduciary's power to sell real property where beneficial and

authorized by the will on court approval without hearing. *Id.* § 1653(b).

¶ 30. The trial court reached its result based, in part, on its conclusion that the executor "has no vested interest in the real property" and "does not have ownership powers with respect to real property in the estate." While we agree narrowly with these points, we do not find them determinative of the issue before us.

¶ 31. The will provision in issue creates a power of appointment in executor. A power of appointment is "a power that enables the donee of the power to designate recipients of beneficial ownership interests in or powers of appointment over the appointive property." Restatement (Third) of Prop.: Wills and Other Donative Transfers § 17.1 (2011).[5] A power is created if the transferor — here the testator — manifests an intent to do so and the transfer is otherwise effective. *Id.* §§ 18.1, 18.1 cmt. a. It is commonly used to direct an executor of an estate to make decisions over who will receive property "or regarding the particular items of estate property that designated persons will receive." *Id.* § 18.1 cmt. f. The power of appointment is not a property interest; the executor is not the "beneficial owner of the appointive property." *Id.* § 17.1 cmt. c.; see *Wales' Adm'r v. Bowdish's Exec.*, 61 Vt. 23, 34, 17 A. 1000, 1003 (1889) (stating that holder of power of appointment "was never the owner").

¶ 32. We recognize a power of appointment to implement the intent of the testator. As we said in *Wales' Administrator* with respect to a power of appointment: "[A]ll the cases agree that the intent of the testator is to be ascertained and followed in giving construction to a will." 61 Vt. at 27, 17 A. at 1000 (quotation omitted).

¶ 33. The concept that a holder of a power of appointment has no property interest in the property involved is consistent with our treatment of a power of sale. We have elsewhere described executors' right to sell the property — when the will grants them the power of sale — as "a common law authority by which they could vest the legal estate in a purchaser, and the purchasers under that power took the estate from the testator by

---

[5] Under the terminology in the Restatement, the "person on whom the power of appointment was conferred" is called the "donee." Restatement (Third) of Prop.: Wills and Other Donative Transfers § 17.2(b) (2011).

whom the power was created, — not from the power itself, — in the same manner as if the power and the instrument executing the power, had been incorporated in one instrument." *Tudor v. Tudor*, 80 Vt. 220, 225, 67 A. 539, 540 (1907). Our statute codifies that principle, providing that "[t]he deed of an executor or administrator, who has such certificate or copy of an order of sale from the probate division of the superior court, shall be as valid to convey the real estate of a deceased person, thereby authorized to be sold, as if the deed had been executed by the deceased in his or her lifetime." 14 V.S.A. § 1652.

¶ 34. Finally, we note on this point that decisions from other jurisdictions show that we are not alone in simultaneously (1) having a principle that legal title passes to heirs or devisees on the death of the testator, and (2) allowing an executor to sell or partition property, if such power is granted by the will. One New York court cited the general rule: "As a rule, title to real property devised under the will of a decedent vests in the beneficiary at the moment of the testator's death," but emphasized the difference between having title to property and being able to sell that property: "[T]he property passes to the devisees subject to the execution of the power to sell by the executor. . . . The executor's discretionary power to sell the property for purposes of distribution does not cause title to the real property to rest in the executor." *DiSanto v. Wellcraft Marine Corp.*, 540 N.Y.S.2d 260, 263 (App. Div. 1989); see also *Brandt v. Stowe*, 194 N.Y.S.2d 77, 79 (Sup. Ct. 1959) ("A mere discretionary power of sale in the executors for purposes of distribution . . . does not vest in them title to the real estate."); *Maier v. Henning*, 578 A.2d 1279, 1282 n.5 (Pa. 1990) ("[A] devisee acquires legal title to specifically devised real property at the death of the testator," but "this title is expressly subject to the powers of the personal representative," so that "until distribution is made, the proper source of the full legal title of a decedent is *both* in the devisee and in the personal representative."). In *Guilbert v. Guilbert*, the court described the interest of a beneficiary of a residual estate that had not yet been divided — and of which the beneficiary might not receive any real property whatsoever based on the division — in the following way: the beneficiary "took an estate in remainder in an undivided one-fourth of the residuary real property, to vest in possession upon the death of his father and mother, subject, however, to the power of sale of the executors in the meantime, and to their

*power to apportion and set apart the different shares.*" 124 N.Y.S. at 568 (emphasis added).

¶ 35. ■ Although Vermont has had very little case law on powers of appointment, we have recognized them by statute. See 14 V.S.A. §§ 202(1)(A), 1952(a), 1954(a); 32 V.S.A. § 7452; *State v. Thomas*, 131 Vt. 228, 230, 303 A.2d 465, 466 (1973) (discussing the tax implications of receiving title to real estate "by the exercise of a power of appointment" (quotation omitted)). We recognized and applied a general power of appointment in the leading case of *Wales' Administrator*, 61 Vt. 23, 17 A. 1000. We see no barrier to enforcing the power of appointment here.

¶ 36. ■ ■ Because the power of appointment is effective without passing title to the executor, the superior court's focus on the title to the property is misdirected. More directly, the superior court's decision is contrary to the intent of the testator, who clearly specified that the decision on how to distribute the property be made by the executor. Although the court was correct that the executor does not hold title, the power of the executor to partition the property to distribute it is not based on title, but instead on the direction of the will, and is effective without title. That is the holding of *Wales' Administrator*, and no action of this Court or the Legislature has changed that holding. To change that holding at this time runs the risk that the intent of the testator in many existing wills will be frustrated.

¶ 37. ■ ■ While we hold that the executor has the power to partition or sell the property to distribute to testator's children, we do not suggest that the power is unlimited. The executor is bound by the requirement that the distribution shares be as equal as possible. See Restatement (Third) of Prop.: Wills and Other Donative Transfers §§ 19.1(3), 19.10 (donee of power must substantially comply with any donor-imposed requirements). Of course, any party who believes that the equality requirement is not being honored may appeal to the court. A leading case in this regard is *In re Rowlands' Estate*, 241 P.2d 781 (Ariz. 1952), in which the will specified that the executor was to distribute the residual estate to "any of my close friends" and added: "Please give generously to Maria . . . who has been a faithful maid." *Id.* at 783. The executor gave all the residual estate to himself and his wife, who were close friends of the testator. The court held that the executor's action was authorized with respect to the close

friends, but the executor could not ignore the plain intent of the testator to give part of the residue to the maid. *Id.* at 785; see also *Harp v. Pryor*, 578 S.E.2d 424, 425 (Ga. 2003) (reviewing a proposed distribution by an executor, to whose discretion the will had left the equal distribution of the residual estate, and finding that, although "[i]n most cases, distributions in kind from different classes of property that result in equal beneficiaries receiving equal value would not show a violation of the executor's duty," this executor's division did show a violation of his duty because the "proposed distribution makes it clear that his interest is inimical to that of [one of the beneficiaries]"). We also note that a devisee does not obtain full incidents of title until there has been a distribution decree by the court. 14 V.S.A. § 1455.

¶ 38. In forming our mandate, we return to the questions before the Court. The superior court answered only the third question of the appellees — Does the Executor have the power under decedent's will to subdivide the real estate in the estate? — because its answer made moot the follow-up questions about the powers of executor and of the probate court. The superior court's answer to the third question — that executor does not have that power — was erroneous. On this point, we reverse the superior court decision. On remand, the court must move on to the fourth and fifth questions in light of executor's action pursuant to her distribution power. It must also answer the first and second questions. The court acts de novo with respect to each of these questions. See *In re Estate of Doran*, 2010 VT 13, ¶ 14, 187 Vt. 349, 993 A.2d 436.

¶ 39. The two questions raised by appellant executor relate to the unique circumstances before the probate court. In reviewing de novo whether executor's distribution complies with the standard in the will, the superior court may or may not choose to impose the same condition as the probate court. Similarly, executor's plan for a survey may or may not arise again. Thus, we cannot determine whether these questions should be answered.

*Reversed and remanded for proceedings not inconsistent with this decision.*