2031 VT 95



In re Estate of Fitzsimmons
(2012-192)

 

2013 VT 95

 

[Filed 18-Oct-2031]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 95
 
  


 No. 2012-192
 
  


 In re Estate of Doris H.
 Fitzsimmons
 
 
 Supreme Court
 
 
 (Joanne Fitzsimmons Balkam, Executor, Appellant)
 
 
  
 
 
  
 
 
 On Appeal from
 
 
  
 
 
 Superior Court, Rutland Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
  
 
 
 January Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Mary
 Miles Teachout, J.
 
 
  
 
 Richard Linton Brock and Thomas Dawson Brock of Brock &
Brock, PLLC, Montpelier for

  Appellant.

 

James W. Swift and Cara L. Cookson of Langrock Sperry &
Wool, LLP, Burlington, for

  Appellees.

 

 

PRESENT:   Reiber, C.J., Dooley, Skoglund and
Burgess, JJ., and Zonay, Supr. J.,

                    
Specially Assigned

 

 

¶ 1.            
DOOLEY, J.  Appellant Joanne Fitzsimmons Balkam appeals the
superior court’s partial summary judgment decision which reversed a probate
court decision that had granted her permission, as executor of her mother’s
estate, to physically partition and sell parts of a real estate property to
make a division between the heirs of her mother’s residual estate.  The
appellees are two of her brothers, Dennis and James Fitzsimmons.  We
reverse and remand.

¶ 2.            
The facts related to this appeal are simple enough.  Doris Fitzsimmons,
a resident of New York, died testate on August 9, 2006.  The will named
Joanne Fitzsimmons Balkam as executor, and was probated in New York.  In
addition to the property that she owned in New York, decedent owned real
property in Wells, Vermont, consisting of a farmhouse on a property of roughly
300 acres—the exact acreage is disputed, as discussed below.  In March
2007, executor submitted the will to the Fair Haven District Probate
Court—which no longer exists, but has been subsumed into the probate division
of the superior court—for proceedings under an ancillary estate.  The
probate court admitted the will for proceedings and designated Joanne
Fitzsimmons Balkam executor in Vermont as well.

¶ 3.            
Under the will, the Wells property is not devised specifically to any
person or persons, but is instead part of the residual estate.  The
residuary clause of the will provides:

I
give . . . the residue . . . of my
estate . . . to my beloved children, JAMES J. FITZSIMMONS
JR., DENNIS M. FITZSIMMONS, KEVIN R. FITZSIMMONS, and JOANNE FITSZIMMONS [sic]
BALKAM . . . in as nearly equal shares as possible, the
division thereof to be determined by any executors acting hereunder, if the
interested parties cannot agree . . . .

Regarding the powers of executor,
the will provides: “I hereby grant to any executors at any time acting
hereunder, full power and authority to retain, manage, and administer my estate
as freely as I could handle my own affairs if living.”  It also explicitly
gives the executor a power of sale:

For any purpose,
to sell for cash or on credit, exchange, lease for any term of years (including
a term greater than authorized by statutory law), mortgage or extend or modify
the terms of mortgages on any real or personal property or interest or estate
therein at any time forming a part of my estate, and to execute such
instruments as may be necessary or advisable.

Nowhere does the will mention any
specific power to partition, although executor argues that the explicit power
of “division” provides that power.  It does, additionally, grant 
executor the power “[t]o make distribution in kind or in cash, or partly in
each, among the persons entitled to share in my estate.”

¶ 4.            
By letter of August 19, 2009, executor proposed to the other heirs that
she would take 110 acres of property, Kevin Fitzsimmons would take another
36-acre parcel, and all four beneficiaries would either sell the remaining
property and divide the proceeds or take it by decree, with executor and Kevin
taking smaller shares to equalize the value of each sibling’s
distribution.  On June 29, 2010, Dennis and James filed a Motion for
Decree of Distribution, proposing instead that all four named beneficiaries be
made tenants in common.  Executor opposed this motion, citing the need to
complete a survey of the property and emphasizing her position that the will
gave her the power to physically divide the property.  Dennis and James
then filed an Objection to Accounting on August 13, 2010, in which they charged
executor with waste and objected to her calculation of attorney’s fees and
inclusion of maintenance fees in an accounting that she had submitted.  In
a supplemental memorandum filed September 10, 2010, executor presented a new
partition plan in which she proposed to divide the property into three parcels,
sell the parcel including the house and split the proceeds, and divide the rest
of the property equally, giving one specified parcel to her and Kevin and the
other to Dennis and James.  

¶ 5.            
The probate court issued an order on November 18, 2010 allowing executor
to proceed with her partition plan but requiring that Dennis and James have the
first choice between the subdivided parcels without the house.  It also
denied the waste claim and the objection to the accounting.  On November
29, 2010, Dennis and James filed a motion for reconsideration/ clarification,
but before the court issued any response, executor filed a notice of appeal to
the superior court.  On January 6, 2011, the probate court issued a
clarification of the court order, and on January 14, 2011, Dennis and James
filed their own notice of appeal to the superior court.

¶ 6.            
The issues raised in executor’s appeal were whether the probate court
had the power to allow the heirs to choose which property they received and
whether the executor had the power to contract for a survey.  In their
statement of questions, Dennis and James raised five issues.  The first
two contested the probate court’s ruling on their claim of waste and their
claim that the accounting was flawed.  The last three addressed the power
of the executor and the probate court with respect to the distribution of the
property: (1) whether executor had the power to subdivide the estate; (2)
whether executor’s proposed division met the requirement of the will that the
estate be distributed into “as nearly equal shares as possible”; and (3)
whether the probate court’s division was proper under its power to partition in
14 V.S.A. § 1729.

¶ 7.            
Appellees filed a motion for partial summary judgment and renewed their
request for a decree distributing the property to the four beneficiaries as
tenants in common.  In addition to her response to this motion, executor
also later filed a motion for license to sell real estate.  In a decision
filed May 2, 2012, the superior court granted appellees’ motion for partial
summary judgment and denied the motion for the license to sell real
estate.  It disagreed with the probate court and found that because legal
title to real property passes to beneficiaries immediately upon the death of a
testator, the executor had “limited ability to affect the beneficiaries’
ownership of the real property” and could not partition the property.  It
referred the waste and accounting issues back to the probate court because the
probate court had not addressed them—an action which all parties agree on
appeal was a mistake because the probate court had addressed those
issues.  Whether or not by mistake, however, the trial court did not take
up all the issues before it.  On May 11, 2011, Dennis and James filed a
motion to reconsider the remand to the probate court, asking the superior court
to deal with the remaining issues.  Executor did not respond to that
motion, but instead filed a notice of appeal to this Court on May 31, 2011,
requesting that we reverse the trial court’s summary judgment order regarding
executor’s power to partition the property.

¶ 8.            
The first question with which we must grapple is whether this case is
properly before us.  After the notice of appeal was filed, appellees moved
to dismiss because they contended that the decision below was not a final
judgment in that it did not resolve all the issues in the case.  We
decided to consider this motion along with the merits.

¶ 9.            
We conclude that appellees are correct that the decision on partial
summary judgment was not a final judgment, because it does not “make[] a final
disposition of the subject matter before the Court.”  Woodard v. Porter
Hosp., Inc., 125 Vt. 264, 265, 214 A.2d 67, 69 (1965).  No particular
analysis is needed to make this decision—the order states in clear language
that it is for partial summary judgment and that “this ruling addresses only
three of the five questions in [appellee]’s Statement of Questions.” 
Therefore, it is not ripe for appeal.  See Hospitality Inns v. S.
Burlington R.I., 149 Vt. 653, 656, 547 A.2d 1355, 1358 (1988) (“[A] final
judgment is a prerequisite to appellate jurisdiction unless the narrow
circumstances authorizing an interlocutory appeal are present.”).  

¶ 10.        
However, we agree with executor that the circumstances of the case are
such that we should decide the merits under Vermont Rule of Appellate Procedure
2.  We have previously described the situations in which we will not apply
the rule that appeals of interlocutory orders may be made only by permission by
the trial court:  “Where dismissal of the appeal would most likely result
in another appeal after final judgment, the merits of the questions of law were
fully briefed and argued before the Court, and the Court has spent valuable
time preparing for the case.”  Huddleston v. Univ. of Vt., 168 Vt.
249, 251, 719 A.2d 415, 417 (1998).

¶ 11.        
Here, these factors are met.  The issue of an executor’s power to
divide property is generally one of first impression in this Court and is
central to this case.  The unresolved issues are separate and less
important.  If we dismiss this appeal, the central issue will almost
certainly return on appeal of the final judgment.  The question was
extensively briefed and argued on both sides, and this Court invested time in
preparing for the case.  Given these circumstances, we deny appellees’
motion to dismiss.[1]

¶ 12.        
Before addressing the main legal issues of the case, however, we must
first consider the executor’s argument that the trial court incorrectly found
that “[t]he facts material to this motion are not in dispute,” and that summary
judgment was improperly granted for that reason.  We review summary
judgment rulings de novo, using the same standard as the trial court. Gallipo
v. City of Rutland, 2005 VT 83, ¶ 13, 178 Vt. 244, 882 A.2d 1177.
Summary judgment is appropriate if, after reviewing the “pleadings, depositions,
answers to interrogatories, and admissions on file, together with the
affidavits, if any,” the movant “show[s] that there is no genuine issue as to
any material fact” and the movant “is entitled to judgment as a matter of law.”
 Id. (quotation omitted); V.R.C.P. 56(a).  The executor
asserts two facts that are in dispute: the acreage and the appraisal value of
the property.  

¶ 13.        
An issue of fact “is material only if it might affect the
outcome.”  N. Sec. Ins. Co. v. Rossitto, 171 Vt. 580, 581, 762 A.2d
861, 863 (2000) (mem.).  Here, the issue on partial summary judgment had
nothing to do with either the acreage or the appraisal value—it was a legal
question as to whether executor had the power to physically partition the land.[2]  The acreage and appraisal value
cited by executor cannot therefore be considered facts material to the motion,
and the trial court properly granted partial summary judgment.  

¶ 14.        
We now turn to the main questions in this appeal.  In doing so, we
stress that we face two types of arguments in this case.  The first type
relies upon the general policy that we must implement the intent of the
testator as far as possible.  All parties make arguments under this
general policy.  The second type relies on limits on the testator’s power
to control the administration of the testate estate through testamentary
provisions—that is, it calls upon the courts to overrule the testator’s
intent.  The superior court decision has elements of both of these
arguments, although we read it as primarily based on acceptance of the argument
that the executor cannot be given the power to partition the property because
real property must be passed immediately to the devisees.  It can
be read also as concluding that the testator intended to pass the real property
in Vermont to the four devisees as tenants in common.  Thus, we must
examine both rationales.

¶ 15.        
We also stress that we are deciding a somewhat artificial question in
this case, and that the artificiality affects the answer.  Primary estate
administration in this case occurred in New York, where testator was domiciled
at the time of her death, and the will provisions in issue are general,
applying to all of the estate property wherever located.  Thus, executor’s
obligation to divide the property as equally as possible applies to the whole
estate, not to any and every particular piece of property.  The parties,
however, have made arguments that require us to look at the property sited in
Vermont in isolation from the rest of the property and as if it were the only
property in the estate, and consequently to judge the fairness of their
positions without considering the rest of the estate distribution.[3]  While we will decide the questions
presented under this constraint, our rationale must consider the will
provisions as a whole.  

¶ 16.        
We start with issues relating to the provisions of the will and the
intent of the testator.  Essentially, executor argues that these
provisions give the power to executor to partition the property as she sees
fit, within the general requirement that the division be “in as nearly equal
shares as possible.”  Appellees argue that “as nearly equal shares as possible”
means that the devisees must take the real property in Vermont as tenants in
common.

¶ 17.        
Our primary objective in construing a will is to determine the intent of
the testator.  See Eckstein v. Estate of Dunn, 174 Vt. 575, 578,
816 A.2d 494, 498-99 (2002) (mem.).  In doing so, we consider all parts of
the will, the relationship of the parties and the circumstances surrounding the
execution of the will.  See id.  We first ascertain the intent
of the testator from the language used in the will.  In re Estate of
Barslow, 129 Vt. 192, 196, 260 A.2d 374, 377 (1969).

¶ 18.        
The phrase “equal shares,” along with the phrase “share and share
alike,” is generally found to mean tenants in common.  See In re
Spreckels’ Estate, 123 P. 371, 379 (Cal. 1912) (“[T]he word ‘divide,’ in
and of itself, does not import an actual physical segregation into distinct
shares.  It is, when used in such phrases as ‘to be divided between,’ or
‘divided in equal shares among,’ or the like, very commonly used to express an
intention to give interests to persons as tenants in common.”); Blaine v.
Dow, 89 A. 1126, 1128 (Me. 1914) (evaluating a will with the phrase “to be
divided equally” and noting that “[p]rovisions for a division have always been
regarded as sufficient to create a tenancy in common”); Wesley Home, Inc. v.
Mercantile-Safe Deposit & Trust Company, 289 A.2d 337, 342 (Md. 1972)
(“[I]n wills the expression[] ‘equally to be
divided’ . . . ha[s] been held to create a tenancy in
common . . . .” (quoting Gilpin v. Hollingsworth, 3
Md. 190, 195 (1852))); Delafield v. Shipman, 9 N.E. 184, 186 (N.Y. 1886)
(considering a will where the surplus was to be divided “equally” between
various beneficiaries, and noting that “[s]uch language is always held to
constitute the beneficiaries tenants in common”).

¶ 19.        
However, “as nearly equal as possible” (or a similar phrase) has been
interpreted to allow for physical partition.  An excellent example is the
New York case of Guilbert v. Guilbert, 124 N.Y.S. 564 (Sup. Ct.
1910).  That will directed the executors “[t]o set apart one-half of the
residuary estate as nearly as the same, in the judgment of my executors, can be
set apart or apportioned” for one party, and used the same language to set out
the other half in two one-quarter portions for other parties.  Id.
at 565-66.  The will gave the executor power to sell “any and all of my
real estate,” and “for that purpose, to make, execute and deliver good and
sufficient deeds of conveyance of such, real estate, or any portion thereof.” 
Id. at 566.  It also gave the executors the power to “join with any
party or parties in the partition of any real estate owned by me with any other
person or persons.”  Id.  It did not, however, specifically
give the power to partition real estate solely owned by the testator. 
Nonetheless, the court found that partition was proper because the language
calling for portions “as nearly as the same, in the judgment of my executors,
can be set apart or apportioned” allowed for the possibility of “apportion[ing]
different parts of the real property . . . so as to produce
the required fractional division as nearly as the language of the will
required.”  Id. at 567.  Particularly, the court explained
that, in a case where the residual estate included both real and personal
property, “the deficiencies of one or more of the shares might have been made
up from the personalty of the estate, or, for all that appears, one or more of
the shares might have been made up entirely of personal property and the real
property apportioned to the remaining share or shares.”  Id.

¶ 20.        
Another relevant New York case of the same vintage is Potter v. Eames,
126 N.Y.S. 787 (Sup. Ct. 1910).  In that case, the will did not give a
power to sell, but directed the executors to “divide my said residuary estate
as nearly as may be, into two equal separate parts or portions, being one part
or portion for the use of each of my two children.”  Id. at
788.  Based on those words, and the absence of a power to sell, the court
concluded, “the surviving trustee is limited in the execution of the trust to
actual partition of the various parcels of real estate.”  Id. at
791.  As explained by the court, this power is “not to divide a single lot
or building into two parts, but to separate from the total or aggregate of the
farms, lots, and buildings one part that will be substantially one-half of the
value of the total number of properties.”  Id.  While the
parties in this case have debated the exact power of executor in light of the
explanatory language, the main point of the Potter decision is that the
divisional language, which is close to that used here, contemplated a physical
partition rather than assignment of the property to the devisees as tenants in
common.  

¶ 21.        
This type of analysis of the phrase “as equal as possible” is
common.  The Supreme Court of California, in attempting to interpret
whether a will that called only for division into “three equal parts” would
allow for partition without that right being expressly given, surveyed cases
from around the country and distinguished its case from those that had language
such as “as equal as possible.”  See Spreckels’ Estate, 123 P. at
379-80.  It concluded: “None of these cases . . . is
authority for the proposition that a mere direction to divide an estate into three
equal parts imports a physical partition of the property, or a valuation
and apportionment into heterogeneous shares of equal appraised value.”  Id.
at 380 (emphasis added).

¶ 22.        
We conclude that the analysis of whether or not a will provides an
executor with the power to partition is not limited to a phrase like “equal
shares” or “as nearly equal shares as possible.”  The Texas Court of
Appeals came to a similar conclusion by focusing on other parts of the will and
what those parts said about the testator’s intention as to partition.  In In
re Estate of Spindor, 840 S.W.2d 665 (Tex. Ct. App. 1992), an independent
executor attempted to make a partition of property between three residuary
beneficiaries, relying on a phrase in the will that directed the executor to
“divide [testator’s] estate,” which he was to do “equally [between testator’s]
three children.”  Id. at 666.  The court found that because
the language of the will did not “provide, in case of dispute or contest, how
the matter shall be determined, . . . it cannot be said
that the will provides a means for partition.”  Id. at 667
(quotation omitted).

¶ 23.        
In looking at all of the language of the will in this case, we note that
in addition to the division power, the will adds “the division thereof to be
determined by any executors acting hereunder.”  It gives the executor the
power to sell real and personal property and “to make distribution in kind or
in cash, or partly in each, among the persons entitled to share in my
estate.”  There can be no doubt that these additional powers apply to
distribution to testator’s children under the residuary clause.  If
testator’s husband had been living at the time of testator’s death, the entire
estate would have been devised to him with no division.  If, as occurred,
testator’s husband predeceased her, the residuary clause came into effect, and
it contemplated two allocations: the division in issue here, and the prior
distribution of testator’s jewelry to her daughter who is executor/appellant
here.  Thus, even if the real property in issue here were the only
property, the executor was given the power to sell it in whole or in part for
distribution.

¶ 24.        
A very important point, however, is that the property before us is not
the only property.  There was property, real and personal, in New York as
well as in Vermont.[4]
 The standard “as nearly equal shares as possible” applies to all the
property wherever located.  The language does not require that each piece
of property, real or personal, has to be divided equally between the
devisees.  Its only requirement is that all the property must be divided
as equally as possible. 

¶ 25.        
Considering all parts of the will and the holdings from other courts, we
find that the phrase “as nearly equal shares as possible” means that testator
intended for executor to have the power to partition her real estate using her
discretion as to creating equal portions of the residual estate, subject only
to the court’s oversight—discussed in the section below—as to whether she was
complying with the terms of her special power.  We reach this conclusion
because of: the language of the equality standard; the fact that the equality
standard applies to the whole estate; the language that explicitly states that
the executor is to make the division, a task unnecessary if the will required
that the devisees would take as tenants in common; and the provision giving the
executor the power to sell and distribute in cash or in kind, powers
inconsistent with automatic distribution to tenants in common.  

¶ 26.        
Having determined that the will grants executor the power to divide the
property in issue physically or to sell it in whole or in part to make the
distribution, we turn now to the main holding of the superior court: that a
fiduciary cannot have such a power with respect to realty because title to
realty immediately passes to the devisees.  

¶ 27.        
The superior court decision is based on a number of Vermont cases that
hold that legal title to real property passes to devisees on the death of a
testator.  See Lysak v. Grull, 174 Vt. 523, 525, 812 A.2d 840, 843
(2002) (mem.) (“Legal title to real property vests immediately at death in the
heirs, subject only to liens and legally enforceable debts of the estate.”); In
re Callahan’s Estate, 115 Vt. 128, 134, 52 A.2d 880, 883 (1947) (“Under our
law, the legal title of real estate owned by a person at the time of his death passes
immediately to his heirs or devisees, subject to the lien of the administrator
or executor thereon for the payment of debts, expenses of administration and
other expenses legally chargeable against the estate, in case the personal
property in the estate is not sufficient for that purpose.”).  The trial
court then extended that logic to mean that an executor “has limited ability to
affect the beneficiaries’ ownership of the real property” and “does not have
ownership powers with respect to real property in the estate.”  Therefore,
it reasoned, the executor “does not have the legal power to partition [the]
real estate.”

¶ 28.        
In our view, the superior court has read these cases to stand for a
limitation on the power of the executor, whether or not provided in the will,
even though the cases are not about that subject.  In both Lysak
and Callahan’s Estate, the identity of the devisee(s) and the interest
devised were known.  This is true for our other cases employing the rule
of immediate passage.  See In re Estate of Bettis, 133 Vt. 310,
313, 340 A.2d 57, 59 (1975); Dartmouth Sav. Bank v. Estate of Schoen,
129 Vt. 315, 319, 276 A.2d 637, 639-40 (1971); Spencer v. Lyman Falls Power
Co., 109 Vt. 294, 299, 196 A. 276, 277 (1938); Watkins v. Merrihew’s
Estate, 99 Vt. 294, 298, 131 A. 794, 796 (1926); Coolidge v. Taylor,
85 Vt. 39, 51, 80 A. 1038, 1044 (1911); Austin v. Bailey, 37 Vt. 219,
222 (1864); Roberts v. Morgan, 30 Vt. 319, 326 (1858).  Thus, the
cases stand only for the proposition that immediate passage occurs when the
devisees and their real estate are identified, but cannot apply when either is
yet unknown.  If we had ruled above that the will provides that all of the
devisees will take the property as tenants in common as a matter of law, the
rule of immediate passage of these estates would govern.  But it cannot
apply where the estates are as yet undetermined.  

¶ 29.        
The holding of the trial court also limits the probate court,
essentially imposing a rule that the court has no jurisdiction over real
property.  The trial court’s holding is inconsistent with the statute
enacted by the Legislature to empower the probate court in exactly the
circumstances present here.  Namely, 14 V.S.A. § 1737 provides: “When
the real estate of a decedent, or any part thereof greater than the share
therein of any one of the heirs, cannot be divided without prejudice or
inconvenience to the owners, proceedings may be had in the probate division of
the superior court for the assignment or sale thereof.”  We view this
power as an adjunct to the responsibility of the probate court to partition
real property assigned to devisees “in common and undivided.”  Id.
§ 1729.  The trial court’s holding also appears to be inconsistent
with the probate court’s power to authorize the fiduciary to sell real property
where it is beneficial and not required to pay “debts, legacies or charges of
administration.”  Id. § 1653(a).  Similarly, the trial
court’s holding is inconsistent with the fiduciary’s power to sell real property
where beneficial and authorized by the will on court approval without
hearing.  Id. § 1653(b).

¶ 30.        
The trial court reached its result based, in part, on its conclusion
that the executor “has no vested interest in the real property” and “does not
have ownership powers with respect to real property in the estate.”  While
we agree narrowly with these points, we do not find them determinative of the
issue before us.

¶ 31.        
The will provision in issue creates a power of appointment in executor. 
A power of appointment is “a power that enables the donee of the power to
designate recipients of beneficial ownership interests in or powers of
appointment over the appointive property.”  Restatement (Third) of Prop.:
Wills and Other Donative Transfers § 17.1 (2011).[5]  A power is created if the
transferor—here the testator—manifests an intent to do so and the transfer is
otherwise effective.  Id. § 18.1, 18.1 cmt. a.  It is
commonly used to direct an executor of an estate to make decisions over who
will receive property “or regarding the particular items of estate property
that designated persons will receive.”  Id. § 18.1 cmt.
f.  The power of appointment is not a property interest; the executor is
not the “beneficial owner of the appointive property.”  Id.
§ 17.1 cmt. c.; see Wales’ Adm’r v. Bowdish’s Exec., 61 Vt. 23, 34,
17 A. 1000, 1003 (1889) (stating that holder of power of appointment “was never
the owner”).  

¶ 32.        
We recognize a power of appointment to implement the intent of the
testator.  As we said in Wales’ Administrator with respect to a
power of appointment: “[A]ll the cases agree that the intent of the testator is
to be ascertained and followed in giving construction of a will.”  61 Vt.
at 27, 17 A. at 1000 (quotation omitted).

¶ 33.        
The concept that a holder of a power of appointment has no property
interest in the property involved is consistent with our treatment of a power of
sale.  We have elsewhere described executors’ right to sell the
property—when the will grants them the power of sale—as “a common law authority
by which they could vest the legal estate in a purchaser, and the purchasers
under that power took the estate from the testator by whom the power was
created,—not from the power itself,—in the same manner as if the power and the
instrument executing the power, had been incorporated in one instrument.” 
Tudor v. Tudor, 80 Vt. 220, 225, 67 A. 539, 540 (1907).  Our statute
codifies that principle, providing that “[t]he deed of an executor or
administrator, who has such certificate or copy of an order of sale from the
probate division of the superior court, shall be as valid to convey the real
estate of a deceased person, thereby authorized to be sold, as if the deed had
been executed by the deceased in his or her lifetime.”  14 V.S.A.
§ 1652.

¶ 34.        
Finally, we note on this point that decisions from other jurisdictions
show that we are not alone in simultaneously (1) having a principle that legal
title passes to heirs or devisees on the death of the testator, and (2)
allowing an executor to sell or partition property, if such power is granted by
the will.  One New York court cited the general rule: “As a rule, title to
real property devised under the will of a decedent vests in the beneficiary at
the moment of the testator’s death,” but emphasized the difference between
having title to property and being able to sell that property: “[T]he property
passes to the devisees subject to the execution of the power to sell by the
executor. . . . The executor’s discretionary power to sell
the property for purposes of distribution does not cause title to the real
property to rest in the executor.”  DiSanto v. Wellcraft Marine Corp.,
540 N.Y.S.2d 260, 263 (App. Div. 1989); see also Brandt v. Stowe, 194
N.Y.S.2d 77, 79 (App. Div. 1959) (“A mere discretionary power of sale in the
executors for purposes of distribution . . . does not vest
in them title to the real estate.”); Maier v. Henning, 578 A.2d 1279,
1282 n.5 (Pa. 1990) (“[A] devisee acquires legal title to specifically devised
real property at the death of the testator,” but “this title is expressly
subject to the powers of the personal representative,” so that “until distribution
is made, the proper source of the full legal title of a decedent is both
in the devisee and in the personal representative.”).  In Guilbert v.
Guilbert, the court described the interest of a beneficiary of a residual
estate that had not yet been divided—and of which the beneficiary might not
receive any real property whatsoever based on the division—in the following
way: the beneficiary “took an estate in remainder in an undivided one-fourth of
the residuary real property, to vest in possession upon the death of his father
and mother, subject, however, to the power of sale of the executors in the
meantime, and to their power to apportion and set apart the different shares.” 
124 N.Y.S. at 568 (emphasis added).

¶ 35.        
Although Vermont has have very little case law on powers of appointment,
we have recognized them by statute.  See 14 V.S.A. §§ 202(1)(A),
1952(a), 1954(a); 32 V.S.A. § 7452; State v. Thomas, 131 Vt. 228,
230, 303 A.2d 465, 466 (1973) (discussing the tax implications of receiving title
to real estate “by the exercise of a power of appointment” (quotation
omitted)).  We recognized and applied a general power of appointment in
the leading case of Wales’ Administrator, 61 Vt. 23.  We see no
barrier to enforcing the power of appointment here.  

¶ 36.        
Because the power of appointment is effective without passing title to
the executor, the superior court’s focus on the title to the property is
misdirected.  More directly, the superior court’s decision is contrary to
the intent of the testator, who clearly specified that the decision on how to
distribute the property be made by the executor.  Although the court was
correct that the executor does not hold title, the power of the executor to
partition the property to distribute it is not based on title, but instead on
the direction of the will, and is effective without title.  That is the
holding of Wales’ Administrator, and no action of this Court or the
Legislature has changed that holding.  To change that holding at this time
runs the risk that the intent of the testator in many existing wills will be
frustrated. 

¶ 37.        
While we hold that the executor has the power to partition or sell the
property to distribute to testator’s children, we do not suggest that the power
is unlimited.  The executor is bound by the requirement that the
distribution shares be as equal as possible.  See Restatement (Third) of
Prop.: Wills and Other Donative Transfers §§ 19.1(3); 19.10 (2011) (donee
of power must substantially comply with any donor-imposed requirements). 
Of course, any party who believes that the equality requirement is not being
honored may appeal to the court.  A leading case in this regard is In
re Rowlands’ Estate, 241 P.2d 781 (Ariz. 1952), in which the will specified
that the executor was to distribute the residual estate to “any of my close
friends” and added: “Please give generously to Maria . . . who
has been a faithful maid.”  Id. at 783.  The executor gave all
the residual estate to himself and his wife, who were close friends of the
testator.  The court held that the executor’s action was authorized with
respect to the close friends, but the executor could not ignore the plain
intent of the testator to give part of the residue to the maid.  Id.
at 785; see also Harp v. Pryor, 578 S.E.2d 424, 425 (Ga. 2003)
(reviewing a proposed distribution by an executor, to whose discretion the will
had left the equal distribution of the residual estate, and finding that,
although “[i]n most cases, distributions in kind from different classes of
property that result in equal beneficiaries receiving equal value would not
show a violation of the executor’s duty,” this executor’s division did show a
violation of his duty because the “proposed distribution makes it clear that
his interest is inimical to that of [one of the beneficiaries]”).  We also
note that a devisee does not obtain full incidents of title until there has
been a distribution decree by the court.  14 V.S.A. § 1455.

¶ 38.        
In forming our mandate, we return to the questions before the
Court.  The superior court answered only the third question of the
appellees—Does the Executor have the power under decedent’s will to subdivide
the real estate in the estate?—because its answer made moot the follow-up
questions about the powers of executor and of the probate court.  The
superior court’s answer to the third question—that executor does not have that
power—was erroneous.  On this point, we reverse the superior court
decision.  On remand, the court must move on to the fourth and fifth
questions in light of executor’s action pursuant to her distribution
power.  It must also answer the first and second questions.  The
court acts de novo with respect to each of these questions.  See In re
Estate of Doran, 2010 VT 13, ¶ 14, 187 Vt. 349, 993 A.2d 436.

¶ 39.        
The two questions raised by appellant executor relate to the unique
circumstances before the probate court.  In reviewing de novo whether
executor’s distribution complies with the standard in the will, the superior court
may or may not choose to impose the same condition as the probate court. 
Similarly, executor’s plan for a survey may or may not arise again.  Thus,
we cannot determine whether these questions should be answered.

Reversed and remanded for proceedings not inconsistent
with this decision. 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
We note, also, that appellees in oral argument represented that they did not
object to this Court denying the motion to dismiss and considering the case
under Vermont Rule of Appellate Procedure 2.

 





[2]  Executor is correct that the trial
court’s decision includes a number for the acreage of the property—332
acres—that is in dispute.  This is certainly a mistake, but it does not
figure into the trial court’s analysis of the legal issue in any way.  It
is not a ground to set aside the superior court decision.





[3]
 The parties have also acted under the assumption that Vermont law, and
not New York law, controls all questions before us.  We note, however,
that there is a principle whereby the power to distribute is controlled by the
law of the domicile of the testator.  “The law of the donor’s domicile has
been held to govern the construction of a will insofar as the exercise of power
of appointment is in question.”  5 Page on Wills, § 45.12, at 646
(2005).  This principle is confusing when combined with the principle that
the law of the situs applies to conveyances of real property.  Townsend
v. Downer, 27 Vt. 119, 123 (1855) (“[T]he conveyance of land, is to be made
according to the law of the place of the land, that is, the lex rei
sitae.”).  Therefore, “[a] difficult problem is presented if testator is
domiciled in one state, and the land which he devises is situated in another
state.” 6 Page on Wills, § 60.6, at 502; see Blaine v. Dow, 89 A.
1126, 1128 (Me. 1914) (“A will is presumed, in the absence of anything to the
contrary, to have been drawn in accordance with the law of the testator’s
domicile and will be interpreted accordingly; but its effect and validity in
respect to the disposition of real property situated in another jurisdiction or
the creation of any interest therein will depend upon the lex rei sitae.”); 6
Page on Wills, § 60.6, at 504-05.  However, given that all parties
agree that Vermont law should be applied—and only to the real property in
Vermont—we accept this assumption and decline to delve further into this
question.  In addition, we note that in cases where

 

the courts of
testator’s domicile . . . may draw the same inferences from
the language of the will and the surrounding circumstances that the courts of
the state in which the land is situated would draw . . . no
case of conflict of laws is presented.  The rule which is common to the
two states is applied, and it makes no difference whether it is thought of as
the law of testator’s domicile or as the law of the state in which the land is
situated.

 

6 Page on Wills, § 60.6,
at 502-03.  In this case we have drawn heavily from decisional law from
the New York courts to indicate that there is no difference between Vermont and
New York law on the key questions.





[4]
 The superior court decision says that the only property in issue is the
Vermont real estate.  The record indicates, however, that there is also
personal property, located in Vermont and physically present at the house on
the real property, valued at $2018.  Although no party has raised issues
with respect to the personal property, we do not understand that its
distribution has been settled.





[5] 
Under the terminology in the Restatement, the “person on whom the power of
appointment was conferred” is called the “donee.”  Restatement (Third) of
Prop.: Wills and Other Donative Transfers § 17.2(b) (2011).